

1

1

2      UNITED STATE DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
3      ------------------------------------------X
       MISS JONES, LLC,
4

5                                      PLAINTIFF,

6              -against-          Index No.:
                                 7:17-cv-01450-NSR
7      KEITH STILES, MOY RLTY, LLC, VAN
       HASSELT AUTO SERVICE,
8

9      ------------------------------------------X
                                 DEFENDANTS.

10

11                       DATE: January 22, 2018

12                       TIME: 10:05 A.M.

13

14

15              DEPOSITION of the Defendant,

16     KEITH STILES, taken by the respective

17     parties, pursuant to a Notice, held at the

18     offices of Diamond Reporting, Inc.  150

19     Broad Hollow Road, Melville, New York

20     11747, before Tiffany Bando, a Notary

21     Public of the State of New York.

22

23

24

25

2

```
 1

 2    A P P E A R A N C E S:

 3

 4

 5    ZIMMERMAN LAW, PC
         Attorneys for the Plaintiff
 6       315 Walt Whitman Road
         Huntington Station, New York 11746
 7       BY: MICHAEL A. ZIMMERMAN, ESQ.

 8

 9

10    JEFFREY I. KLEIN, ESQ.
         Attorneys for the Defendants
11       200 Mamaroneck Avenue
         White Plains, New York 10601
12       BY: JEFFREY I. KLEIN, ESQ.

13

14

15

16

17                  *           *           *

18

19

20

21

22

23

24

25
```

3

1
2          F E D E R A L   S T I P U L A T I O N S
3
4

5      IT IS HEREBY STIPULATED AND AGREED by and
6      between the counsel for the respective
7      parties herein that the sealing, filing and
8      certification of the within deposition be
9      waived; that the original of the deposition
10     may be signed and sworn to by the witness
11     before anyone authorized to administer an
12     oath, with the same effect as if signed
13     before a Judge of the Court; that an
14     unsigned copy of the deposition may be used
15     with the same force and effect as if signed
16     by the witness, 30 days after service of
17     the original & 1 copy of same upon counsel
18     for the witness.
19

20     IT IS FURTHER STIPULATED AND AGREED that
21     all objections except as to form, are
22     reserved to the time of trial.
23

24                    *      *      *      *
25

```
 1                      STILES
 2   August of 2009?
 3        A.     I believe the address is 118
 4   Maddaket Loop Road in Mooresville, in the
 5   same town.
 6               MR. KLEIN:  If you don't mind,
 7          M-A-D-D-A-K-E-T Loop, for the
 8          Reporter.
 9               MR. ZIMMERMAN:  That is fine.
10        Q.     How long did you live at that
11   address at Maddaket Loop?
12        A.     One year.
13        Q.     So that would mean you moved in
14   there, approximately, August of 2008?
15        A.     Correct.
16        Q.     Where did you live prior to
17   that?
18        A.     136 Elmwood Road.
19        Q.     That is the subject property
20   that the National City mortgage was taken
21   out?
22        A.     Yes.
23        Q.     What was the purpose of the
24   second mortgage?
25               MR. KLEIN:  I will object to
```

DIAMOND REPORTING  (877) 624-3287   info@diamondreporting.com

```
 1                    STILES
 2        the form.   The purpose from whose
 3        point of view, the bank's?
 4        Q.      You took a second mortgage,
 5   correct, why did you take the second
 6   mortgage?  What was the money to be used
 7   for?
 8             MR. KLEIN:   Again, I object to
 9        form.  If you want to ask what it was
10        used for, I have no objection.
11             MR. ZIMMERMAN:   First I am
12        asking when he took the loan what the
13        purpose was for, I will then ask the
14        follow-up question, if I choose to,
15        but there is nothing wrong with the
16        form of the question.  It is an
17        understandable question.
18             MR. KLEIN:   Please proceed.
19        Q.      What was the purpose of the
20   loan that you took?
21        A.      What was the purpose of the
22   loan that I took, I don't know that I had
23   an exact purpose when I took the loan in
24   mind.  I was offered a line of credit and I
25   accepted it.
```

```
 1                     STILES
 2        Q.    So it wasn't being used to
 3   refinance another mortgage on the property;
 4   correct?
 5        A.    That is correct.
 6        Q.    Was it being used to refinance
 7   other debt or consolidate other debt?
 8             MR. KLEIN:  Note my objection
 9             to the materiality, but you may
10             answer, if you are able.
11        A.    Repeat the question.
12        Q.    Was the loan intended to be
13   used to consolidate or refinance other
14   debt?
15        A.    I think I answered, you know,
16   that I didn't take it with any specific
17   purpose, that it was offered to me and I
18   accepted it.
19        Q.    At some point you said it was a
20   line of credit, did you withdraw money from
21   that line of credit?
22        A.    I am sure I did.
23        Q.    Do you recall how much money
24   you withdrew from that line of credit?
25        A.    I don't.
```

```
 1                    STILES
 2        Q.    What did you use the money that
 3   you withdrew for?
 4        A.    I can't exactly remember what I
 5   used it for.   We are talking over eight
 6   years ago.
 7        Q.    Did you use any of the money
 8   that you withdrew from this line of credit
 9   to purchase your current residence in North
10   Carolina?
11        A.    No.
12        Q.    Did you use any of the money
13   withdrawn from this line of credit to
14   purchase another property?
15        A.    No.
16        Q.    The property that you lived in
17   prior to your current residence, did you
18   own it?
19        A.    No.
20        Q.    Do you own your current
21   residence?
22        A.    No.
23        Q.    Who owns your current
24   residence?
25              MR. KLEIN:   That is
```

```
 1                    STILES
 2          MR. KLEIN:  I am aware of the
 3      rules, but the Discovery Demand --
 4          MR. ZIMMERMAN:  That Discovery
 5      Demand, and what does it say, it is
 6      withheld until after the deposition
 7      because the question can be asked at
 8      the deposition.
 9          MR. KLEIN:  That is not what it
10      says.
11          MR. ZIMMERMAN:  Regardless, I
12      am asking the question.  This is not
13      a Discovery demand, this is a
14      deposition.
15          MR. KLEIN:  Give me some idea
16      where it is going.
17          MR. ZIMMERMAN:  I do not need
18      to do that.
19          Can you read back the question,
20      please.
21          (Whereupon, the referred to
22      question was read back by the
23      Reporter.)
24          MR. KLEIN:  If you recall the
25      amount, answer the question.  It is
```

```
 1                      STILES
 2           objected to, but answer.
 3                MR. ZIMMERMAN:  Please do not
 4           advise your client, there is a
 5           question pending.  He understands the
 6           instructions.
 7           A.    Repeat the question.
 8                (Whereupon, the referred to
 9           question was read back by the
10           Reporter.)
11           A.    I don't see the relevance of
12     the question.
13           Q.    Please answer the question.
14                MR. KLEIN:  It's an improper
15           question, but I say you can answer it
16           over objection.
17                MR. ZIMMERMAN:  Counselor.
18           A.    So I don't get to ask the
19     relevance of the question?
20           Q.    No.
21           A.    I don't get to do that.
22                I don't think I am answering
23     that question.  Let's move on.
24                MR. KLEIN:  Do you want to mark
25           that to call the judge?
```

```
 1                  STILES
 2    year it was for, but I remember seeing
 3    something from the town stating either they
 4    were paid or weren't paid, I can't
 5    remember.
 6         Q.    What about a 1099 from your
 7    first mortgage company regarding property
 8    insurance paid by them?
 9         A.    What is the question?
10         Q.    Did you receive any documents
11    indicating the property insurance was paid
12    by your first mortgage company?
13         A.    I don't recall.
14         Q.    On your 2009 taxes did you
15    deduct property taxes or property
16    insurance?
17              MR. KLEIN:  I am going to
18         object because, again, the question
19         about his income taxes, what he has
20         paid, what he has not paid, what his
21         income has been --
22              MR. ZIMMERMAN:  I don't want an
23         explanation.
24              MR. KLEIN:  It is an objection,
25         he will not answer it.
```

```
 1                    STILES
 2              MR. ZIMMERMAN:  He will not
 3         answer it?
 4              MR. KLEIN:  Correct.
 5              MR. ZIMMERMAN:  We will get a
 6         ruling on that.
 7         Q.    In 2010 did you deduct property
 8    taxes or property insurance on your tax
 9    return?
10              MR. KLEIN:  Same objection,
11         same reason.
12              MR. ZIMMERMAN:  We are getting
13         the objection on the record and will
14         get a ruling on it.
15              MR. KLEIN:  I will save you the
16         time, he is not giving you his tax
17         records.
18              MR. ZIMMERMAN:  You are not
19         saving me time because we are getting
20         it on the record.
21         Q.    In 2011 did you deduct property
22    taxes or property insurance for 136 Elmwood
23    Road on your tax return?
24              MR. KLEIN:  He will not answer
25         it.
```

```
 1                    STILES
 2        A.     No.
 3        Q.     Do you know where John Langer
 4   worked at the time?
 5        A.     No.
 6        Q.     When you moved out of the
 7   premises did you notify either your first
 8   mortgage company or the company that held
 9   your line of credit of your change of
10   address?
11        A.     I don't recall.
12        Q.     You don't recall if you
13   notified either one of them?
14        A.     Correct.
15        Q.     If you did notify them would
16   you have notified them by letter or some
17   other writing?
18             MR. KLEIN:  Objection to what
19        he would have done.  Objection to the
20        form.
21             MR. ZIMMERMAN:  Can he answer?
22             MR. KLEIN:  He can answer.
23        A.     I don't recall.
24        Q.     Would you have any records at
25   home that might indicate whether you
```

```
 1                    STILES
 2   notified them of your change of address?
 3        A.    It's possible.
 4        Q.    I would ask you to search those
 5   records and please provide me with any
 6   documentation evidencing or notes that you
 7   may have evidencing that you notified
 8   either company of your change of address.
 9              After you stopped being a loan
10   officer what did you begin doing for a
11   living?
12        A.    Um, been out of work for a long
13   time.  Um, I haven't really had a steady
14   job since then.
15        Q.    2481 Central Park Avenue in
16   Yonkers, New York, are you familiar with
17   that premises?
18        A.    Yes.
19        Q.    What is that, how are you
20   familiar with it?
21        A.    Used to have a business there a
22   long time ago.
23        Q.    What business was that?
24        A.    I was in the auto glass
25   business.
```

```
 1                    STILES
 2        A.    Yes.
 3        Q.    When is the first time?
 4        A.    I have no recollection of when
 5   the first time is.
 6        Q.    How many times did you
 7   refinance the primary mortgage?
 8        A.    I couldn't tell you that
 9   either.
10        Q.    Was it more or less than ten
11   times?
12              MR. KLEIN:   Those are matters
13         of public record.
14        A.    I mean come on, really.
15        Q.    More or less than ten times?
16              MR. KLEIN:   Was it bigger than
17         a bread box?  It's a matter of public
18         record.
19              MR. ZIMMERMAN:   Counsel.
20              MR. KLEIN:   You can see he is
21         hesitating, he doesn't really have an
22         answer for you.
23        A.    I don't recall.
24        Q.    So it could have been more than
25   ten times, okay.
```

```
 1                     STILES
 2        A.    It could have been more than 50
 3  times too, I just don't recall.
 4        Q.    Are you familiar with an
 5  address 39 Paddock Lane, Bedford, New York?
 6        A.    Yes.
 7        Q.    Whose address is that?
 8        A.    That was one of my residences.
 9        Q.    When did you reside there?
10        A.    Prior to Elmwood Road.
11        Q.    Did you stop residing there
12  when you began residing at Elmwood Road?
13        A.    Yes, I sold that property and
14  then I bought Elmwood Road.
15        Q.    At what point did you sell
16  Paddock prior to --
17        A.    Six months prior to me
18  purchasing Elmwood Road, approximately.
19        Q.    Are you familiar with an
20  address 105 South Bedford Road in Mount
21  Kisco?
22        A.    I am not recalling that
23  address.
24        Q.    Okay.
25              Who is Ann Stiles?
```

1                    STILES

2        A.    No.

3        Q.    Did you ever apply for a loan

4   modification on your first mortgage?

5        A.    No.

6        Q.    Did you ever apply for a loan

7   modification on your second mortgage?

8        A.    No.

9        Q.    Is there a third mortgage on

10  this property or 136 Elmwood?

11              MR. KLEIN:  If you mean was a

12          mortgage recorded, yes, you know the

13          answer to that because it's of record

14          and you have added the Defendant.

15              MR. ZIMMERMAN:  There is

16          obviously a record, but I need to ask

17          him about it, so.

18        Q.    Did you ever take a third

19  mortgage on this property?

20        A.    Yes.

21              MR. KLEIN:  Note that mortgage

22          is being contested in a separate

23          matter.

24              MR. ZIMMERMAN:  Okay.

25        Q.    Do you recall if you had a

```
 1                    STILES
 2   purpose for taking that third mortgage?
 3        A.     I don't recall.
 4        Q.     Do you recall what you used the
 5   money from the third mortgage for?
 6        A.     No.
 7        Q.     Did you, in fact, receive money
 8   from the third mortgage?
 9        A.     Yes.
10        Q.     At any time since August of
11   2008 did you make a promise to pay or make
12   a payment on the second mortgage or the
13   line of credit we are here for today?
14        A.     No.
15        Q.     Do you recall receiving a
16   letter regarding this second mortgage
17   notifying you of what the outstanding
18   balance was and that you had a right to get
19   assistance in foreclosure and providing you
20   with a list of organizations that could
21   provide you assistance?
22               Please do not review documents.
23        A.     I can't look at stuff that I
24   provided you with?
25        Q.     Correct.
```

```
 1                    STILES
 2              I am asking if you received a
 3    letter notifying you -- give me one second,
 4    let me pull it.
 5              Please do not review records.
 6              MR. KLEIN:   Just give him a yes
 7         or no and he will carry it from
 8         there.
 9              MR. ZIMMERMAN:   Off the record.
10              (Whereupon, an off-the-record
11         discussion was held.)
12         Q.    Did you receive a notification
13    in 2016 that you could lose your home, to
14    read the notice carefully that provided you
15    with organizations that could assist you in
16    trying to save your home from foreclosure?
17         A.    From who?
18         Q.    Regarding the second mortgage
19    that we are here for today.
20         A.    Did I receive something from
21    2016 from the second mortgagee?
22         Q.    Yes.
23         A.    At my address in --
24         Q.    I am just asking if you
25    received it.
```

```
 1                      STILES
 2         A.     Saying that -- I am sorry.
 3         Q.     Warning you that you could lose
 4    your home in foreclosure and providing you
 5    with a list of organizations that could
 6    assist you in attempting to save your home.
 7         A.     I don't recall, I may have.
 8                (Short break taken.)
 9         Q.     Did you ever receive
10    communications from National City after you
11    took the second mortgage?
12         A.     Yes.
13         Q.     What types of communications
14    were those?
15         A.     I received bills, I have
16    submitted them to your law firm, to my
17    attorney who has submitted to you,
18    everything that I had in my records.
19         Q.     Did you ever receive anything
20    other than bills from National City?
21         A.     I believe there was a bill in
22    there and there were default letters also.
23         Q.     You did not receive the actual
24    documents that you gave your lawyer at or
25    near the dates on those documents; correct?
```

```
 1                      .          STILES
 2                 MR. KLEIN:   He asked about the
 3           last page.
 4                 MR. ZIMMERMAN:   Then I am going
 5           to go to the second to last and then
 6           cover the initials.
 7           A.    Obviously that is not my
 8     signature.
 9           Q.    Second to last page, is that
10     your signature?
11           A.    I don't know that it is my
12     signature, but.
13           Q.    Do you recognize your own
14     signature?
15           A.    I am not a handwriting expert,
16     but.
17           Q.    Does that look like your
18     signature?
19           A.    It looks like it could be.
20           Q.    Do you recall signing a
21     document like this in or about July of
22     2007?
23           A.    I must have signed it because I
24     got the money, so if that is the answer.
25           Q.    Are those your initials on each
```

1                          STILES

2      of the pages?

3              A.     Could be my initials, yeah.

4              Q.     Does it look like your

5      initials, the way you write them?

6              A.     It looks very similar to mine.

7              Q.     Was the property in your name,

8      your wife's name, or both of your names?

9              A.     That I don't recall.

10             Q.     On the last page would that be

11     your wife's signature; to the best of your

12     knowledge?

13             A.     It could be her signature.

14             Q.     Does it look like her

15     signature?

16             A.     Um, is that not a suspicious

17     answer.  I don't know that it is her

18     signature, I can't swear that that is her

19     signature.

20             Q.     I am asking if it looks like

21     her signature, you have been married for

22     many years.

23             A.     Does it look like her

24     signature, it looks like it.

25             Q.     And the initials next to yours,

```
 1                    STILES
 2   does that look like her initials?
 3         A.     Yeah.
 4                MR. KLEIN:   Yeah what?
 5                THE WITNESS:   It could be.
 6         Q.     Do you recall if your wife
 7   signed the documents or any of the
 8   documents when you took the line of credit
 9   out?
10         A.     Yeah, I can't really recall
11   signing that document.  I am not saying I
12   didn't sign it, I can't recall, you know,
13   me signing the document or my wife signing
14   the document.
15         Q.     I am going to show you what has
16   been marked as Plaintiff's Exhibit 3
17   (handing).
18                Do you recognize this document?
19         A.     Well, looks like an equity line
20   of credit agreement.
21         Q.     Is that your signature on the
22   second to last page?
23         A.     Same signature as on the
24   mortgage and initials look the same, yes.
25         Q.     Do you recall signing a
```

```
 1                    STILES
 2   City you did not receive all the documents
 3   by facsimile, but PNC you are not sure?
 4        A.     Well, I am saying that there
 5   are some documents that I provided to my
 6   attorney that I received via -- via the
 7   fax, now whether that was from National
 8   City, PNC, or whoever sent it to me, you
 9   know, if I see the document I can tell you
10   where I got the document from, whether I
11   have the original or whether I received it
12   in the mail and have the original or
13   requested it from what company to refresh
14   my memory and they faxed it to me,
15   everything in their file.
16              (Whereupon, documents were
17         marked as Plaintiff's Exhibits 4
18         through 9 for identification as of
19         this date by the Reporter.)
20        Q.     I am going to show you what has
21   been marked as Plaintiff's Exhibit 4.  It
22   appears to be dated July 11, 2009,
23   (handing).
24              Can you tell me what that is?
25        A.     It looks like a default letter
```

```
 1                     STILES
 2   letter.
 3        Q.     That is dated July 11, 2009?
 4        A.     Yes.
 5        Q.     Is this one of the documents
 6   that you gave your attorney?
 7        A.     Yes.
 8        Q.     How did you receive this actual
 9   document that you gave your attorney?
10        A.     Via fax.
11        Q.     If you could take a look at 4A,
12   the next page, this is also the same
13   letter?
14        A.     It's the same letter.
15        Q.     Bates stamped, you see the
16   number in the lower left stamped on it?
17        A.     I see a date.
18        Q.     Not a date.  A number.
19        A.     I see 011 on the left-hand
20   corner.
21        Q.     Right.
22             MR. ZIMMERMAN:  Just let the
23          record reflect that that is
24          Mr. Stiles' attorney's bates stamp.
25        Q.     So this was stamped by your
```

```
 1                    STILES
 2           MR. KLEIN:  Same objection.
 3           MR. ZIMMERMAN:  Okay.
 4           MR. KLEIN:  He IS not going to
 5      answer it in that form.  Just clarify
 6      what you are asking.
 7      Q.    Do you have any independent
 8  recollection of seeing the original
 9  document dated July 11, 2009 from National
10  City, if one exists?
11      A.    I believe I did receive a
12  default letter from them.
13      Q.    Do you recall if it was
14  specifically this one dated July 11, 2009?
15      A.    Honestly, for me to say I
16  remember the date on a letter I received
17  back in 2009, I can't say I remember it was
18  July 11, 2009, but that is --
19      Q.    So I will back up.
20            In July of 2009 you were living
21  at Maddaket Loop; correct?
22      A.    If that fits within the one
23  year I would still be on Maddaket Loop.
24      Q.    Do you recall if you received
25  such a default letter or acceleration when
```

1                           STILES

2    asking do you remember where you were

3    living when you received the letter.

4              I will withdraw that question

5    and I will ask it again after I show you

6    the other letters, okay.  Let's just do it

7    that way.

8         A.    That would make sense.

9         Q.    So I am going to show you what

10   has been marked as Exhibit 5 (handing).

11             MR. KLEIN:  Can he hold 4?

12             MR. ZIMMERMAN:  That is fine.

13        Q.    Do you recognize that letter?

14        A.    Yes, it's a default letter.

15        Q.    And what is the date on this

16   one?

17        A.    October 24, 2009.

18        Q.    And is this one of the letters

19   that you provided to your attorney?

20        A.    Yes.

21        Q.    How did you receive this

22   letter?

23        A.    Originally by mail, and then by

24   facsimile from National City.

25        Q.    I am asking about the specific

1                    STILES
2    letter that you sent to your attorney, the
3    actual letter that you sent to your
4    attorney.  This is a copy provided by your
5    attorney.  Did you receive it by facsimile
6    or by mail or by some other method?
7         A.    The one I sent him I received
8    via facsimile.
9         Q.    So we haven't gotten to any
10   document that you received by mail that you
11   sent to your attorney yet; correct?
12                MR. KLEIN:   The record will
13         speak for itself.  Let's move onto
14         another question.
15        A.    I am not saying I didn't
16   receive these in the mail.  I am saying --
17        Q.    I am not talking about whether
18   you received copies or originals of these
19   years earlier, but these actual documents.
20        A.    We are not talking about years
21   earlier.  We are talking about this
22   document, I am not talking about years
23   earlier.
24        Q.    When is the first time you,
25   personally, recall receiving this document,

```
 1                    STILES
 2   Exhibit 5?
 3        A.    I believe I received Exhibit 5
 4   and also Exhibit 4 in 2009 on and around
 5   the dates that I see in front of me, July.
 6        Q.    So we are talking about
 7   Exhibit 5.  You are saying you recall
 8   receiving an original of Exhibit 5 in the
 9   mail in 2009?
10        A.    You know, I don't know what to
11   say.
12        Q.    You just testified, and I am
13   breaking it up because you said 4 and 5 so
14   now I am asking you do you recall receiving
15   Exhibit 5 in the mail?
16        A.    I believe I received the
17   default letters in the mail, yes.
18        Q.    I am not speaking in general,
19   but each specific document.  Do you have a
20   recollection of any specific default letter
21   or just the receipt of a default letter?
22             MR. KLEIN:  Or letters.
23             MR. ZIMMERMAN:  Or letters.
24        Q.    I want to know which one you
25   received, if you don't remember which one I
```

```
 1                    STILES
 2              MR. ZIMMERMAN:   Yeah.   I think
 3         it is 6 and 6A.
 4         A.     Yeah, I believe I provided him
 5    a copy of this letter.
 6         Q.     And the redaction was not on
 7    the letter when you provided it to your
 8    attorney, neither was the number in the
 9    lower left of 6A or the fax headers on the
10    top of either 6 or 6A; correct?
11              MR. KLEIN:   6 or 6A?
12         Q.     Actually, take that back.
13              6A without the number in the
14    lower left-hand corner, that is actually a
15    copy of the document that you provided to
16    your attorney; correct?
17         A.     That's correct.
18         Q.     And how did you receive that
19    document, the actual document that you
20    provided to your attorney with the fax
21    header on the top?
22         A.     I received -- that one I
23    provided my attorney, I received that via
24    fax.
25         Q.     And do you have any
```

```
 1                  STILES
 2   my attorney and my attorney told me to --
 3              MR. KLEIN:   Don't discuss what
 4         you and I talked about.
 5         A.      And I checked my records, the
 6   first thing I did was check my records for
 7   any information I had on National City,
 8   PNC, and I found certain things in there.
 9   I had recalled receiving default letters, I
10   was looking for default letters, I couldn't
11   find them in the files that I looked, but I
12   did find some information that I provided
13   my attorney with and I picked up a
14   statement from, I believe it was National
15   City, and I called the 800 number, maybe it
16   was PNC, maybe it was National City, I
17   would have to look at the documents, and I
18   called them to tell them that I received
19   default letters on or around 2009 and could
20   they search their records and provide me
21   with any information that they had.  They
22   said they would.  I gave them my
23   information and they sent me the three
24   default letters that I provided to my
25   Counsel.
```

```
 1                     STILES
 2          Q.    And those would be the three
 3    default letters that we have been
 4    discussing?
 5          A.    That's correct.
 6          Q.    Did you receive any other
 7    default letters other than these three from
 8    PNC or National City?
 9          A.    I believe that was asked and
10    answered in the prior question.
11          Q.    I don't believe you answered
12    it.
13               MR. ZIMMERMAN:   In fact, I am
14          going to withdraw it and can you read
15          the question back.
16               (Whereupon, the referred to
17          question was read back by the
18          Reporter which is re-stated below.)
19          Q.    Other than these three letters
20    and statements from National City and PNC,
21    did you receive any other correspondence
22    from National City or PNC?
23          A.    I answered that question in the
24    prior question.
25          Q.    Actually, you didn't.  I
```

```
 1                    STILES
 2   2010, did anyone occupy that house between
 3   the time you left in August or about
 4   August 2008 up until that individual
 5   occupied the house?
 6                    MR. KLEIN:  You mean was he the
 7          first tenant?
 8          Q.    I am asking, first off, did
 9   anybody occupy the house between August of
10   2008 and him moving in in 2010?
11          A.    No, but I had been back and
12   forth to the house during that period of
13   time, but there was no one living there
14   full-time.
15          Q.    When you would return to the
16   house would you stay in the house?
17          A.    Sometimes.
18          Q.    Was there anybody maintaining
19   the house in terms of heat, water; things
20   like that?
21          A.    I was paying all the bills.
22          Q.    Did you have anyone checking on
23   the house during that time period?
24          A.    Yes.
25          Q.    Did the house ever get mail
```

```
  1                    STILES
  2    that wasn't forwarded, for instance?
  3        A.     I am sure it did.
  4        Q.     Did anybody forward you the
  5    mail?
  6        A.     I have had people pick up mail
  7    for me before there and I have picked up
  8    mail there before and I have had people
  9    pick up mail for me before and hold it for
 10    me while I was in New York at times.
 11        Q.     From August 2008 until,
 12    approximately, February of 2010 when you
 13    said you had the mail forwarding, was there
 14    anybody forwarding mail to you other than
 15    the U.S. Postal Service?  Like, in other
 16    words, did any mail get through to the
 17    house that wasn't forwarded that you had
 18    forwarded to you or did it all get
 19    forwarded to you?
 20        A.     You know, knowing the Postal
 21    Service that is a good question, that is a
 22    very good question.
 23            (Whereupon, the referred to
 24            question was read back by the
 25            Reporter.)
```

109

```
 1                    STILES

 2          the question or you think there is

 3          some other legal implication --

 4          A.    I don't hold the mortgage, no.

 5          Q.    So if I told you I have a

 6   recorded document in front of me that

 7   indicates that you own 50 percent of a

 8   $300,000 mortgage on that property you are

 9   telling me that this document is incorrect?

10                MR. KLEIN:  Are you asking for

11          a legal --

12                MR. ZIMMERMAN:  He is saying he

13          doesn't own it.  I have a document

14          that says that he does.

15                MR. KLEIN:  Right.

16                MR. ZIMMERMAN:  I am trying to

17          determine if there is a

18          misunderstanding here, if the

19          document is wrong.

20                MR. KLEIN:  There is a legal

21          implication that he can't answer.

22                MR. ZIMMERMAN:  He is an

23          intelligent man who knows whether he

24          owns or does not own.

25                MR. KLEIN:  No, he does not,
```

```
 1                    STILES
 2         because he is not an attorney.
 3              MR. ZIMMERMAN:  He is not
 4         capable of determining if he owns or
 5         doesn't own something?
 6              MR. KLEIN:  Correct, and I
 7         maintain the objection as to the
 8         relevance of the question to the
 9         issues in this case.
10         Q.    You mentioned before that you
11    were familiar with the property.  How is it
12    that you are familiar with the property?
13              MR. KLEIN:  Enough, he is not
14         going to go into 128th Street
15         anymore.
16              MR. ZIMMERMAN:  We will call
17         the judge and take it from here.
18              (Whereupon, an off-the-record
19         discussion was held.)
20              (Whereupon, at this time, the
21         attorneys called the Court.)
22              MR. ZIMMERMAN:  We were on the
23         phone with chambers that indicated
24         the individual there could give their
25         opinion as to the questions.  Counsel
```

```
 1                    STILES
 2        did not want his opinion, wanted the
 3        Judge's opinion.  The Judge is
 4        unavailable.  We were told the Judge
 5        should be available in a half an hour
 6        and to call back.  Counsel has
 7        indicated that they are not waiting.
 8             As far as I am concerned, those
 9        questions are still pending, the
10        refusal to answer them is in
11        violation of Federal Rules and their
12        choice to leave at 2:30 in the
13        afternoon of a deposition is
14        premature, is objectionable,
15        actionable, and I am going to wait
16        and try to get a ruling.  They have
17        the choice of waiting around.  If
18        they leave I am either going to ask
19        for preclusion or the witness, at
20        minimum, be required to appear here
21        tomorrow morning.
22             MR. KLEIN:  My client has
23        indicated to me that, as he stated
24        when we opened, he is not feeling
25        well, he is on medication and he
```

112

```
1                    STILES
2       feels he has answered any question
3       that is in any way relevant to the
4       issues at bar.  I feel the same way,
5       and as I told Counsel again when we
6       started, I have a situation at home
7       which calls for me to get home as
8       quickly as I can.  My wife has had
9       surgery, there is nobody with her and
10      I have to be home with her.  I will
11      be glad to participate in a joint
12      telephone call with the Judge at the
13      tail end of the afternoon if that is
14      practical, but I cannot stay to a
15      time when we do not know.  So we are
16      leaving.
17          MR. ZIMMERMAN:  So you are
18      giving two different explanations,
19      one is medical and one is I have done
20      enough?
21          MR. KLEIN:  Correct.
22          MR. ZIMMERMAN:  If it were
23      medical you would be here tomorrow
24      morning.
25          MR. KLEIN:  I would show you my
```

```
1                    STILES
2       schedule for tomorrow.
3            MR. ZIMMERMAN:  I have a
4       schedule as well.
5            MR. KLEIN:  Which has my wife
6       going to two different doctors, she
7       only has one husband and that is me.
8            MR. ZIMMERMAN:  I completely
9       understand.  Then are we coming back
10      Wednesday?
11           MR. KLEIN:  Let's see what the
12      Judge says when you call.
13           (Whereupon, at this time,
14      Mr. Klein and Mr. Stiles left the
15      Examination room and did not return.)
16           (Whereupon, at this time,
17      Mr. Zimmerman called the Court.)
18           MR. ZIMMERMAN:  I did get Judge
19      Roman on the phone.  I advised him
20      that we posed questions that were
21      objected to and that we needed a
22      ruling on because they refused to
23      answer.  The Judge pointed out that
24      the Federal Rules require them to
25      answer the questions after putting
```

114

1                          STILES
2        the objection on the record.    I
3        explained that they refused,
4        nonetheless, and he essentially told
5        me that I should make a Motion at
6        this point because they didn't answer
7        the questions that the Federal Rules
8        require them to answer.
9               (Whereupon, at 3:05 P.M., the
10       Examination of this witness was
11       concluded.)
12
13              o          o          o          o
14
15
16
17
18
19
20
21
22
23
24
25

1                              STILES

2                      D E C L A R A T I O N

3

4          I hereby certify that having been

5 first duly sworn to testify to the truth, I

6 gave the above testimony.

7

8          I FURTHER CERTIFY that the foregoing

9 transcript is a true and correct transcript

10 of the testimony given by me at the time

11 and place specified hereinbefore, *subject*

12 *to the corrections on the errata sheet.*

13

14

15              _____
                KEITH STILES

16

17

18 Subscribed and sworn to before me

19 this _23rd_ day of _February_   20 _18_ .

20

21

22 _____
   NOTARY PUBLIC

23                    JEFFREY I. KLEIN
                Notary Public, State of New York
                No. 01KL6098948

24                 Qualified in Westchester County
                Commission Expires Aug. 18, 2019

25

**Diamond Errata Sheet**

Plaintiff(s): _____

_____

_____

Defendant(s): _____

_____

| Page | Line | Correction | Reason for Correction |
|------|------|------------|----------------------|
| 12 | 3 | "I believe the address is 112" | Checked Records |
| 20 | 25 | "Around 3 months After I moved | Better Recollection |
| 11 | 11 | out of" | " " |
| 21 | 5 | "Around 3 months after August of | " " |
| 21 | 5 | 2008, Correct" | " " |
| 22 | 9 | "That's approximately Correct" | " " |
| 22 | 12 | "And Forwarding until approximately | " " |
| 11 | 11 | until May of 2010" | " " |
| 25 | 23 | "That question" | Mistranscription |
| 25 | 24 | "Lets move on, Do you want to MARK" | Mistranscription |
| 28 | 24 | "I don't understand the question" | Mistranscription |
| 39 | 25 | "112" | Checked my Records |
| 40 | 5 | "Yes that was my Address" | Checked my Records |
| 54 | 12 | "Signature, but it appears to be" | Review of Document |
| 55 | 16 | "Um, It Could be pen signature" | Mistranscription |
| 55 | 17 | "I don't know that it is her | Mistranscription |
| 56 | 14 | "the document, I know we had" | Better Recollection |
| 56 | 14 | A closing and we signed the papers" | Discussion with wife |
| 62 | 24 | "It came to me with the | Discussion with Attorney and |
| 77 | 24 | account numbers and my Attorney | review of documents As received. |
| 77 | 24 | redacted it because of court rules" | " " |
| 89 | 22 | "That's Correct from whoever sent | Better Recollection |
| 89 | 22 | the Fax" | " " |
| 97 | 12 | "Not make it to North Carolina" | Left out the word Not |
| 95 | 3 | "I believe I am saying that | Discussion with wife |
| 95 | 3 | Also, somebody came to the house | " " |
| 95 | 3 | with a copy of the papers" | " " |

Date: 2/31/18

Name of Witness:

Signature: _____

Subscribed and sworn to before me

This _____ of _____ 20 ___.

Notary Public