UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MISS JONES LLC,

                      Plaintiff,

-against-

KEITH STILES, MOY RLTY, LLC, VAN
HASSELT AUTO SERVICE,

                      Defendants.

No. 17 Civ. 1450 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Miss Jones LLC brings this action based on diversity jurisdiction against Defendants[1] Keith Stiles, Moy Rlty, LLC, and Van Hasselt Auto Service to foreclose on a mortgage. Presently before this Court is Defendant Stiles's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 37.) For the following reasons, Defendant's motion for summary judgment is DENIED.

## BACKGROUND

    The following facts are drawn from Parties' 56.1 submissions and the record, and they are undisputed unless otherwise noted.

    On and before July 7, 2007, Defendant was the owner of a premises at 136 Elmwood Road, South Salem, New York ("Mortgaged Premises"). (Pl.'s 56.1 ¶ 2, ECF No. 45.) Defendant took a credit line mortgage loan for a line of credit up to $350,000 from National City Bank on or about July 7, 2007. (Id. ¶¶ 3 – 4.) The loan was evidenced by an Equity Reserve Agreement ("Agreement") and a Credit Line Mortgage. (Id. ¶ 3.) Under the terms of the

---

[1] Although there are multiple defendants in this case, the Court will refer primarily to "Defendant" throughout this Opinion because Defendant Stiles is the Defendant moving for summary judgment. (ECF No. 37.)

Agreement, Defendant was required to make monthly interest payments to National City Bank. (*Id.* ¶ 5.) The mortgage instrument was recorded in the clerk's office for Westchester County on October 25, 2007. (*Id.* ¶ 6.) Sometime after that date, the mortgage and the Agreement were assigned through various conveyances to Plaintiff who is the current owner of those instruments. (*Id.* ¶ 7.) The note and mortgage contain the following terms governing nonpayment and default:

> Bank can terminate your Line and require you to pay the entire outstanding balance in one payment if you breach a material obligation of this Agreement in that . . . "[y]ou do not meet the repayment terms of this Agreement."
>
> Paragraph 8 of the Mortgage, entitled "Default" states, that "Mortgagor will be in default if any of the following occur . . . "(a)ny Consumer borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due."
>
> Paragraph 9 of the Mortgage, entitled "Remedies on Default" provides that "[l]ender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default."

(*Id.* ¶¶ 23 – 25); (Zimmerman Decl. Ex. C, ECF No. 43, ("Credit Line Mortgage") ¶¶ 8 – 9.)

From 2007 until July 2008, Defendant made monthly interest payments to National City Bank pursuant to the Agreement. (*Id.* ¶ 8.) The last payment Defendant made to National City Bank was on July 31, 2008. (*Id.* ¶ 9.) Since that date, Defendant has made no further payments to National City Bank nor to any successor in interest to National City Bank, and he has made no statement acknowledging the continuing validity of the debt to National City Bank or any of its successors. (*Id.* ¶¶ 10 – 11.) Defendant has also not applied to National City Bank or its successors for a modification, extension, or reinstatement of the mortgage. (*Id.* ¶ 12.) Plaintiff moved out of the Mortgaged Premises in August 2008. (*Id.* ¶ 26); (Zimmerman Decl. Ex. E, ("Def. Tr.") Def. Tr. 12:13 – 22.)

According to Defendant, National City Bank sent Defendant letters in which it notified Defendant that "[e]ffective immediately, the Account is hereby accelerated and we hereby demand payment in full of the entire amount owing on the Account." (Def.'s 56.1 ¶¶ 15 – 17, ECF No. 42.) Those letters were allegedly sent to the address for the Mortgaged Premises. (*Id.*) All of the letters contained identical language and they were dated July 11, 2009, October 24, 2009, and December 14, 2009. (*Id.*) However, Plaintiff disputes that Defendant received these letters in 2009 because "Defendant Stiles has failed to provide admissible proof that said notices were in fact mailed to Defendant Keith Stiles on the date[s] of the alleged mailing." (Pl.'s 56.1 ¶¶ 15 – 17.) Over eight years after August 2008, when Defendant failed to pay any interest payment for the first time, Plaintiff filed the action currently before the Court on February 27, 2017. (*Id.* ¶ 14); ("Complaint," ECF No. 1.)

## LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] . . . affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence [in] support" of such a contention. Fed. R. Civ. P. 56(c)(1)(B). A fact is material if a dispute over that fact could impact the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party fulfills its

preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Id.* (quotations and citations omitted).

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a motion for summary judgment should fail. *Id.* at 258. Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quotations and citations omitted). The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotations and citations omitted). Similarly, "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)) (noting that such affidavits "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact"). However, the mere fact that a non-movant's factual allegations in opposition are "self-serving" does not automatically render them insufficient to defeat summary judgment. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Instead, summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that

party's case," where "that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. If the Court finds that one party to a case has "no real support for its version of the facts," a motion for summary judgment should be granted. *Community of Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494, 498 (2d Cir. 1962).

## DISCUSSION

In his motion, Defendant argues that summary judgment should be granted because Plaintiff commenced the action after the statute of limitations had expired. Also, according to Defendant, Plaintiff brought this action outside of the statute of limitations, the Court should also order that the mortgage be expunged from the record. Plaintiff, however, contends that the Court should not grant Defendant's motion because Defendants failed to file a timely answer, Defendant Stiles failed to cooperate with discovery, and the statute of limitations had not expired when Plaintiff filed this action. The Court will first address Plaintiff's procedural objections to Defendant's motion. Then, it will determine whether the statute of limitations has expired, which includes a determination of whether there is sufficient admissible evidence from which a reasonable jury could conclude that repayment of the debt had been accelerated prior to this action. Finally, the Court will address whether the mortgage should be expunged.

**I.  Plaintiff's Procedural Objections to Defendant's Motion for Summary Judgment**

Plaintiff first argues that Defendant's motion for summary judgment must be denied because he failed to timely file an answer. However, the Court granted Defendants an extension until June 12, 2017 to respond to the Complaint. (ECF No. 18.) On June 2, 2017, Defendants submitted a letter request for a pre-motion conference in anticipation of filing a motion to dismiss. (ECF No. 19.) Under the individual practices of this Court, a letter request for a pre-motion conference stays the deadline for the requesting party to move or answer. Individual Practice Rule 3(A)(ii). Two days before the pre-motion conference, Defendants filed an answer. (ECF No. 23.) That Defendants chose to file an answer before the pre-motion conference does not change the fact that the deadline for filing a response to the Complaint had been stayed by their letter request for a pre-motion conference. Accordingly, the Court rejects this argument.

Plaintiff also argues that Defendant's motion must be denied because Defendant failed to cooperate with Plaintiff's discovery. Specifically, Plaintiff states that at his deposition, Defendant refused to answer multiple questions and left the deposition prematurely rather than make specific objections on the record and allowing the deposition to continue as required under Federal Rules of Civil Procedure Rule 30(c)(2). (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") pp. 4 – 5, ECF No. 44.) Defendant also failed to answer Plaintiff when it requested responses to the outstanding deposition questions after the deposition. (*Id.*) As a threshold matter, the Court notes that the proper remedy for Plaintiff is to make a motion to compel or for sanctions due to Defendant's failure to complete his deposition.

While Defendant's failure to cooperate with the deposition was inappropriate, denial of Plaintiff's motion based solely on this misconduct is unwarranted. Plaintiff did not identify any cases in which a court denied a defendant's motion to dismiss or for summary judgment based on

6

the defendant's failure to complete a deposition. Cases in which courts grant dismissal of claims against parties for their refusal to comply with discovery involve conduct more egregious than that at issue in this case. *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 165 (W.D.N.Y. 2007) (dismissing claims of two parties because they refused to attend their depositions, respond to interrogatories, or otherwise comply with court discovery orders); *Tafari v. McGinnis*, No. 02-CV-1733(HB), 2003 WL 21180398, at *2 (S.D.N.Y. May 19, 2003) (granting dismissal of a plaintiff's complaint where plaintiff failed to cooperate in scheduling a deposition and failed to finish the deposition beyond an hour and fifteen minutes of questioning once it was scheduled). Courts have discretion in whether to award sanctions for discovery abuses. *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012); *Coty Inc. v. Excell Brands, LLC*, No. 15-CV-7029(JMF), 2016 WL 7187630, at *2 (S.D.N.Y. Dec. 9, 2016). In its discretion, the Court will not deny Defendant's motion due to his failure to complete his deposition. Accordingly, the Court next considers the merits of Defendant's motion for summary judgment.

## II. Statute of Limitations

### A. Applicability of N.Y.C.P.L.R. § 206(a)

The statute of limitations is an affirmative defense, and therefore the defendant has the burden of establishing *prima facie* proof that the limitations period has expired. *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995). Once the defendant has met its burden, it shifts to the plaintiff to establish that the limitations period should be tolled. *Id.* Actions based upon a bond or a note, payment of which is secured by a mortgage on real property, are subject to a six-year statute of limitations under New York law. N.Y.C.P.L.R. § 213(4). New York law provides that, generally, the time within which an action must be commenced should be

7

computed from the time the cause of action accrued to the time the claim is interposed. N.Y.C.P.L.R. § 203(a). However, in cases where a demand is necessary to entitle a person to commence an action, subject to certain exceptions inapplicable here, "the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete." N.Y.C.P.L.R. § 206(a).

Defendant argues that Plaintiff's claim is barred by the six-year statute of limitations under New York law. According to Defendant, the statute of limitations accrued in 2008 when demand could have been made because Defendant missed his interest payment for the first time. (Mem. of Law of Def. Stiles in Supp. of Mot. for Summ. J., ECF No. 40.) Defendant argues in the alternative that even if the statute of limitations was calculated from the date of the first acceleration letter, July 2009, Plaintiff's action would still be outside of the statute of limitations. (*Id.*) However, Plaintiff contends that § 206(a), which applies to situations in which a demand is necessary, is inapplicable to the matter currently before the Court because Plaintiff had no obligation to make a demand prior to commencing this action. (Pl.'s Opp'n p. 2.)

Under the terms of the Agreement and the mortgage, demand was not necessary to entitle Plaintiff to commence an action. Parties do not dispute that neither the mortgage nor the Agreement require Plaintiff to mail a notice of default and allow for a period to cure prior to commencing this action. (Pl.'s Opp'n p. 6); (Reply Mem. of Law of Def. Keith Stiles in Supp. of Mot. for Summ. J., ECF No. 47.) Upon a review of record, the Court found nothing to indicate that Plaintiff was required to provide Defendant with a notice of default or otherwise demand repayment before commencing an action.[2] Under the plain language of the statute, § 206(a) only

---

[2] The document provides that "[i]n some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure

applies to those situations "where a demand is necessary to entitle a person to commence an action." N.Y.C.P.L.R. § 206(a); *Cont'l Cas. Co. v. Stronghold Ins. Co., Ltd.*, 866 F. Supp. 143, 146 (S.D.N.Y. 1994) (holding that § 206(a) did not apply to a case where there was no requirement that the debtholder make a formal demand prior to bringing suit and stating that "this section applies only where a demand requirement is a procedural as opposed to a substantive element of the cause of action"). Because there was no demand requirement here, § 206(a) does not apply and the cause of action to collect on the entire debt did not accrue on the initial default. *In re Bennett Funding Grp., Inc.*, 292 B.R. 476, 478, 480 (Bankr. N.D.N.Y. 2003) (noting that the consolidation agreement contained a permissive rather than mandatory acceleration clause and holding that "[b]ecause the New York Court of Appeals rejected the argument that the cause of action accrues upon the initial default in an installment payment, it similarly must be rejected here"); *Phoenix Acquisition Corp.*, 81 N.Y.2d at 141 – 42. Rather, the statute of limitations must be calculated for each installment on which the debts were not paid or the date on which the entire debt was accelerated for the reasons described below. *See id*.

Parties do not dispute that the loan at issue was payable by installments. (Pl.'s 56.1 ¶ 5.) Typically, "when a mortgage is payable in installments, causes of action accrue separately for each installment that is not paid, and the statute begins to run from the respective due date for each installment." *U.S. Bank Tr., N.A. v. Adhami*, No. 18-CV-530(PKC)(AKT), 2019 WL 486086, at *4 (E.D.N.Y. Feb. 6, 2019) (quoting *Zucker v. HSBC Bank, USA*, No. 17-CV-2192(DRH)(SIL), 2018 WL 2048880, at *5 – 6 (E.D.N.Y. May 2, 2018)) (internal quotation mark omitted). However, if a mortgage payable by instalments is accelerated, the entire amount

---

actions," (Credit Line Mortgage ¶ 9) but this is hardly a requirement that Plaintiff make a demand before filing an action.

becomes due and the six-year statute of limitations commences. *Id.* Acceleration clauses may be automatic, meaning that the full amount of the debt becomes due and payable automatically upon default or, as is the case here, they may require the debtholder to act to accelerate the loan after a default. *Compare Phoenix Acquisition Corp.*, 81 N.Y.2d at 141 – 42 (rejecting the argument that the claim accrued upon the initial default in an installment payment on an installment loan because, under the terms of the loan agreement, the full debt would not be accelerated unless the debtholder exercised an acceleration option), *with Bild v. Konig*, No. 09-CV-5576(ARR)(VVP), 2012 WL 13109964, at *7 (E.D.N.Y. Dec. 20, 2012) (holding that the six year statute of limitations began to run the day the mortgaged property was sold because the loan agreement included an automatic acceleration clause which stated that "all sums due to Lender hereunder shall be due and payable upon a sale of the premises").

The acceleration clause in this case was not automatic. The Agreement provides that the debtholder "can terminate [Defendant's] Line and require [Defendant] to pay the entire outstanding balance in one payment if [Defendant] . . . do not meet the repayment terms of this Agreement." (Pl.'s 56.1 ¶¶ 23 – 25); (Credit Line Mortgage ¶ 9 ("[Upon default,] Lender may accelerate the Secured Debt and foreclose this Security Instrument . . . .")). The permissive language of the Agreement shows that the underlying debt would not be accelerated unless and until Plaintiff acted to accelerate repayment. To accelerate repayment of a loan where, as here, acceleration is optional, the debtholder must take "some affirmative action . . . evidencing the holder's election to take advantage of the accelerating provision." *Costa v. Deutsche Bank Nat'l Tr. Co. for GSR Mortg. Loan Tr. 2006–OA1*, 247 F. Supp. 3d 329, 340 (S.D.N.Y. 2017) (internal quotation marks omitted) (quoting *Wells Fargo Bank, N.A.* v. *Burke*, 943 N.Y.S.2d 540, 542 (N.Y. App. Div. 2d Dep't 2012)). The requisite affirmative act may be a demand or through the

commencement of a foreclosure action. *Id.* A demand to exercise the acceleration option must be "clear and unequivocal." *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 201 (S.D.N.Y. 2018); *Costa*, 247 F. Supp. 3d at 341.

Parties do not allege that there has been any other foreclosure action than the instant action before this Court. Therefore, the Court may only hold that this action is barred by the statute of limitations if it determines that the acceleration letters are admissible evidence and that there is no genuine issue of material fact as to whether the acceleration letters satisfied the demand requirements.

**B. Sufficiency of Acceleration Letters as Demands to Trigger the Beginning of the Statute of Limitations**

A notice of default which includes clear and unequivocal language that a loan is due in its entirety can accelerate repayment of a loan, and the statute of limitations commences with the date of acceleration. *Gustavia Home, LLC v. Hoyer*, No. 16-CV-4015(PKC)(VMS), 2019 WL 316720, at *10 (E.D.N.Y. Jan. 24, 2019); *Assets Recovery 23, LLC v. Gasper*, No. 15-CV-5049(RJD)(CLP), 2017 WL 3610568, at *8 (E.D.N.Y. July 25, 2017). Here, Parties dispute, first, whether the letters are admissible and, second, whether Defendant ever received them. Plaintiff argues that the Court cannot consider the acceleration letters because Defendant has failed to submit them in admissible form. It also contends that the letters are inadmissible hearsay and that Defendant cannot show he ever received the letters. Defendant, on the other hand, claims that the acceleration letters are admissible and that he received them in 2009.

**1. Best Evidence Rule**

Because the letters Defendant submits are in fact duplicates of the original letters, the Court must consider whether the letters should be excluded under the best evidence rule. The best evidence rule and exceptions to that rule are codified in Rules 1002 through 1004 of the Federal Rules of Evidence. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002). To prove the contents of a writing, the proponent of the writing typically must submit the original. Fed. R. Evid. 1002. However, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Under Rule 1004, the absence of an original writing is excused if (1) all the originals are lost or destroyed and not by the proponent in bad faith; (2) an original is unable to be obtained through any available judicial process; (3) the party against whom the original would be offered had control of the original and was at the time put on notice that the original would be evidence for a hearing or trial; or (4) the writing is not closely related to a controlling issue. Fed. R. Evid. 1004; *Allegra v. Bowen*, 670 F. Supp. 465, 468 (E.D.N.Y. 1987) (noting that if a writing is unable to be obtained by a party through any judicial process under Rule 1004(b), it is as good as lost or destroyed). The exceptions to the best evidence rule are in place because the "need for relevant evidence" overrides dangers of inaccuracy where there are no genuine questions about the authenticity. *See Allegra*, 670 F. Supp. at 468.

Here, admitting the duplicates of the three acceleration letters would not be a violation of the best evidence rule. There is no genuine question about the authenticity of the acceleration letters based solely on their condition and appearance. The letters themselves are addressed to Defendant and contain the return address for National City Bank. Defendant testified that he received the original letters in 2009. (Def.'s Decl. ¶ 5, ECF No. 38); (Def.'s Reply Decl. ¶¶ 3 &

9, ECF No. 46); (Def. Tr. 69:14 – 24.) According to Defendant's testimony, he recalled receiving the acceleration letters and searched for them in his personal records and, when he realized that he had not retained them, he reached out to PNC Bank.[3] (Def.'s Reply Decl. ¶¶ 4 – 5); (Def. Tr. 82:5 – 25.) PNC Bank then faxed him copies of the letters along with a cover page from PNC containing Defendant's name and fax number, the date, and the name and phone number for the PNC representative sending the fax. (Def.'s Reply Decl. ¶¶ 4 – 5 & Ex. A); (Def. Tr. 61:8 – 10; 82:21 – 25.) Additionally, there is nothing in the record to indicate that Defendant lost the originals through an act of bad faith.[4] Fed. R. Evid. 1004; *cf. Kwiatkowski v. Bear Stearns & Co.*, No. 96-CV-4798(VM), 2000 WL 502856, at *5 (S.D.N.Y. Apr. 26, 2000) (holding that there was no evidence that the proponent of evidence had destroyed or lost the original evidence in bad faith and so allowing the introduction of a duplicate). Rather, Defendant testified that he lost track of the letters in the over seven years between his receipt of them and the commencement of this action. (Def. Tr. 82:9 – 11.)

Plaintiff argues that there are too many alterations to the duplicates for them to be reliable: The duplicates have fax information from PNC stamped at the top, the account number

---

[3] PNC Bank took over National City Bank on October 23, 2008. Press Release, PNC, PNC to Acquire National City (Oct. 24, 2008), *available at* http://pnc.mediaroom.com/index.php?s=3473&item=74230. Courts may take judicial notice of publicly available documents. *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011).

[4] Plaintiff cites to *Amica Mutual Insurance Co. v. Kingston Oil Supply Corp.* to support its argument that Defendant did not properly show that the original was unavailable. (Pl.'s Opp'n p. 15.) In *Amica Mutual Insurance Co.*, the Second Department barred secondary evidence of a contract's terms due to the significance of the contract in proving the plaintiff's breach of contract claims. 134 A.D.3d 751 – 52 (N.Y. App. Div. 2d Dep't 2015); (Pl.'s Opp'n p. 15.) However, *Amica Mutual Insurance Co.* is easily distinguishable from the instant case. In *Amica Mutual Insurance Co.*, the copy of the lost contract that the proponent offered to replace the original was unsigned and undated, unlike the original. *Id.* at 751. The proponent of the contract offered an affidavit from an employee to explain the absence of the original which stated that the defendant probably lost the original contract, and that employee also testified about the missing signature and date on the document. *Id.* at 752. Additionally, the contract in *Amica Mutual Insurance Co.* was lost in the less than four years between the creation of the contract and the commencement of the action. *Id.* at 750 – 51. Here, in contrast, Defendant realized that he lost the original acceleration letters after he searched for them. (Def. Tr. 82:5 – 25.) Moreover, there was no significant material missing from the acceleration letters, unlike the contract in *Amica Mutual Insurance Co.*

is partially blocked out, there are exhibit numbers at the bottom of the pages, the copy is slightly crooked, and the very bottom of the page reads "Notice. See reverse side for Important Information" yet the reverse side is blank. (Pl.'s Opp'n p. 13.) However, none of these alterations are significant enough to raise doubts about the authenticity of the original or show that it would be unfair to admit the duplicates. *See Keywords, LLC v. Internet Shopping Enter., Inc.*, No. 05-CV-2488(MMM), 2005 WL 8156440, at *4 (C.D. Cal. June 29, 2005) (ruling that writings would not be excluded as inadmissible duplicates under Rule 1003 because, although it was alleged that the writings were altered, the duplicates were authenticated by an individual with personal knowledge of their contents). The addition of the fax information and the exhibit numbers do not alter the content of the letters, and the content is still clearly legible despite the slight tilt to the copy. Although the account number is partially blocked out, the letters are still plainly addressed to Defendant and obviously concern the loan at issue.[5] Moreover, Plaintiffs are incorrect that the reverse sides of the acceleration letters were not included. (Def.'s Decl. in Supp. Ex. E); (Def.'s Reply Decl. Ex. A.)

### 2. Hearsay

Plaintiff also argues that the letters should be excluded as inadmissible hearsay. Hearsay is an out of court statement offered as evidence to prove the truth of the matter asserted and is typically inadmissible. Fed. R. Evid. 801(c), 802. However, the inadmissibility of hearsay is subject to certain exceptions. Fed. R. Evid. 803, 804. One such exception is the business records exception which allows for the admission of records of regularly conducted activity if all of the following are true: (1) The record was made at or around the time by someone with

---

[5] The original loan was for $350,000 and the letters note that Defendant's accelerated balance is $347,561.96. (Def.'s Decl. in Supp. Ex. E); (Def.'s Reply Decl. Ex. A.)

knowledge; (2) the record was kept in the course of regularly conducted activity of a business; (3) the making of the record was a regular practice; and (4) all of these conditions are established by the testimony of the custodian of the record or another qualified witness. Fed. R. Evid. 803(6). The custodian need not have personal knowledge about the creation of the document for a document to be admissible under this exception, *Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F. Supp. 2d 373, 379 (S.D.N.Y. 2004), but the custodian must be able to explain the record keeping system applicable to the record and testify that the record keeping requirements were met. *United States v. Iredia*, 866 F.2d 114, 120 (5th Cir. 1989), *cert. denied*, 492 U.S. 921 (1989).

Here, the business records exception does not apply because Defendant has not offered testimony from a qualified witness that the acceleration letters were made at or around the time of the defaults, the letters were filed as part of regular business, and that the creation of the letters was part of regular business practice. While Defendant offers his own testimony, Defendant is not qualified to testify to the intricacies of National City Bank's or Plaintiff's record keeping practices in general or with respect to the acceleration letters. In submitting this motion, Defendant failed to proffer testimony from an employee of Plaintiff regarding the acceleration letters and proper procedures. Defendant provides the Court with an excerpt of a transcript from a conversation he had with a PNC employee about PNC's record keeping procedures and whether those procedures were followed for the three acceleration letters at issue. (Def.'s Reply Decl. ¶ 6 & Ex. B). However, similar to Plaintiff's testimony, this apparently self-prepared transcript is not testimony from a qualified witness as required under the Federal Rules of Evidence. Fed. R. Ev. 803(6).

"The principles governing admissibility of evidence do not change on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997). Accordingly, a party who seeks to rely on business records must introduce those records in a manner that identifies them and establishes that they are admissible under the proper Federal Rule of Evidence. *Ravenell v. Avis Budget Grp., Inc.*, No. 08-CV-2113(SLT)(SMG), 2014 WL 1330914, at *2 (E.D.N.Y. Mar. 31, 2014). One way to present such evidence is to submit an affidavit " 'from a document custodian' that 'explain[s] whether [the records] were kept in the ordinary course of business.' " *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, No. 04-CV-2293(JFB)(SMG), 2007 WL 74304, at *3 (E.D.N.Y. Jan. 8, 2007) (quoting *Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.,* 317 F. Supp. 2d 373, 378 – 79 (S.D.N.Y. 2004)). "Otherwise, the Court may not rely on those documents." *Ravenell*, 2014 WL 1330914, at *2; *see Flaherty v. Coughlin*, 713 F.2d 10, 14 (2d Cir. 1983) (holding that verification of documents attached to a motion for summary judgment was a "prerequisite to a grant of summary judgment"). District courts have broad discretion in deciding whether to admit evidence at the motion for summary judgment stage. *Raskin*, 125 F.3d at 65. The acceleration letters are central to this motion. If the Court admitted them into evidence, the Court could potentially determine that there was no genuine dispute that the action had been brought outside of the statute of limitations and grant Defendant's motion for summary judgment. Without the acceleration letters, Defendant cannot show that there was a demand made or any other affirmative act to accelerate the loan. Therefore, because of the importance of the letters to the outcome of this motion and the absence of proper authentication or foundation, the Court cannot currently consider Defendant's testimony that he received the letters in 2009 or his statement in his reply

declaration that a PNC employee told him that the letters complied with the requisite record keeping procedures.

The point of the Federal Rules of Evidence is to make sure that the Court, and eventually jurors, only consider evidence that is reliable. Defendant has not made a sufficient showing that the acceleration letters are reliable as required by the Federal Rules of Evidence, and there is nothing in the record to indicate that another hearsay exception would apply. Accordingly, because Defendant failed to authenticate the letters and Defendant attempt to introduce them as proof of the truth of their contents, they are inadmissible hearsay.[6] Based on the admissible evidence, the statute of limitations only accrued for each of the installment payments on the day Defendant failed to pay them and then on the debt as a whole when Plaintiff filed the instant action. Because the statute of limitations has not expired on the entire debt, Defendant is not entitled to judgment as a matter of law.

### III.   Expunging Mortgage

Defendant's argument that the Court should expunge the mortgage from the record is premised on the assumption that the Court would determine that Plaintiff's action fell outside the statute of limitations. (Mem. of Law of Def. Stiles in Supp. of Mot. for Summ. J); N.Y. Real Prop. Acts. Law §§ 1501 & 1521. Because the Court holds that the statute of limitations has not run on the entire debt, it cannot expunge the mortgage.

---

[6] The Court will not consider whether there is a genuine issue of material fact as to whether Defendant received the acceleration letters as it has determined that those letters are inadmissible.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 37. Parties are directed to appear for an in-person pretrial conference at 12:15 PM on April 4, 2019.

Dated: March 18, 2019
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge