UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MISS JONES LLC,

                Plaintiff,

-against-

KEITH STILES, MOY RLTY, LLC, VAN HASSELT AUTO SERVICE,

                Defendants.

No. 17 Civ. 1450 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Miss Jones LLC brings this action based on diversity jurisdiction against Defendants[1] Keith Stiles, Moy Rlty, LLC, and Van Hasselt Auto Service to foreclose on a mortgage. On March 18, 2019, the Court denied Defendant Stiles's motion for summary judgment ("March Opinion"). *Miss Jones LLC v. Stiles*, No. 17-CV-1450(NSR), 2019 WL 1244945, at *8 (S.D.N.Y. Mar. 18, 2019). Presently before this Court are Defendant's motion for reconsideration of the Opinion denying Defendant summary judgment (ECF No. 84) and Plaintiff's motion to appoint a receiver. (ECF No. 77.) For the following reasons, Defendant's motion for reconsideration is DENIED and Plaintiff's motion to appoint a receiver is GRANTED.

Familiarity with the March Opinion and the factual background of this matter are presumed.

---

[1] Although there are multiple defendants in this case, the Court will refer primarily to "Defendant" throughout this Opinion because Defendant Stiles was the Defendant moving for summary judgment and is the Defendant moving for reconsideration. (ECF No. 37.)

# LEGAL STANDARDS

## I. Reconsideration

Motions for reconsideration are governed by Local Civil Rule 6.3, and the standard for granting a motion for reconsideration "is strict." *McCloud v. Perez*, No. 17-CV-1827(AJN)(KNF), 2018 WL 5818103, at *1 (S.D.N.Y. Aug. 17, 2018) (quoting *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995)). Indeed, reconsideration will generally only be granted if the moving party can point to matters which "might reasonably be expected to alter the conclusion reached by the court, *Mahadeo v. N.Y. City Campaign Fin. Bd.*, 514 F. App'x 53, 55 (2d Cir. 2013), including the following: "[A]n intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. N.Y. City Dep't of Soc. Serv.*, 709 F.2d 782, 789 (2d Cir. 1983) (internal quotation marks omitted).

Reconsideration of a court's previous order is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005) (internal citation and quotation omitted), *aff'd sub nom. Tenney v. Credit Suisse First Boston Corp.*, Nos. 05-CV-3430, 05-CV-4759, 05-CV-4760, 2006 WL 1423785, at *1 (2d Cir. 2006). A motion for reconsideration "is not a vehicle for . . . presenting the case under new theories . . . or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quotation and citation omitted). Nor is such a motion "an occasion for repeating old arguments previously rejected . . . ." *RSM Prod. Corp. v. Fridman*, No. 06-CV-11512, 2008 WL 4355406, at *2 (S.D.N.Y. Sept. 23, 2008) (internal quotation marks omitted).

Further, the decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (internal quotation marks omitted).

## II. Appointment of receiver

District courts may appoint a receiver to collect rents for the duration of a foreclosure proceeding. *See Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 847 (9th Cir. 2009)*; Chase Manhattan Bank, N. A. v. Turabo Shopping Ctr., Inc.*, 683 F.2d 25, 26 (1st Cir. 1982); *United States v. Chester Park Apartments, Inc.*, 332 F.2d 1, 5 (8th Cir. 1964); *View Crest Garden Apartments, Inc. v. United States*, 281 F.2d 844, 847 (9th Cir. 1960). The appointment of a receiver is procedural and is governed by federal law in diversity actions. Fed. R. Civ. R. Rule 66; *see U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 249 (S.D.N.Y. 2012) ("Whether a federal court should appoint a receiver in a diversity action is governed by federal law."). When deciding whether appointment of a receiver is warranted, district courts should consider the following factors:

> (1) Fraudulent conduct by the defendant; (2) any imminent danger that the property would be lost, injured, or otherwise lessened in value; (3) the inadequacy of available legal remedies; (4) whether the harm to the plaintiff caused by a denial of the appointment would be greater than the injury to those opposing the appointment; (5) the plaintiff's likelihood of success in the action and the possibility of irreparable injury to the plaintiff's interests in the property; (6) whether the property is inadequate security for the outstanding debt; and (7) the financial status of the debtor.

*See Chase Manhattan Bank, N.A.*, 683 F.2d at 26; *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc.*, 550 F. Supp. 2d 481, 492 n.72 (S.D.N.Y. 2008) (citing *United States v. Trusty Capital, Inc.*, No. 06-CV-8170(KMK), 2007 WL 44015, at *1 (S.D.N.Y. Jan. 5, 2007)); *Vaarsames v. Palazzolo*, 96 F. Supp. 2d 361, 366 (S.D.N.Y. 2000); *United States v. Zitron*, No. 80-CV-6535(RLC), 1990 WL 13278, at *2 (S.D.N.Y. Feb. 2, 1990). The final two factors, the

3

inadequacy of the property to secure the debt and the financial status of the debtor, alone are insufficient show that appointment of a receiver is appropriate. *Chase Manhattan Bank, N.A.*, 683 F.2d at 26.

Whether to appoint a receiver is a decision left to the discretion of the district court. *See United States v. Vulpis*, 967 F.2d 734, 737 (2d Cir. 1992); D.*B. Zwirn Special Opportunities Fund, L.P.*, 550 F. Supp. 2d at 491. It is also an extreme remedy and should be "granted only when clearly necessary to protect plaintiff's interests in the property." *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir.1988)).

## DISCUSSION

I. **Motion for reconsideration**

Defendant raises two grounds for reconsideration which the Court will consider in turn. First, Defendant argues that the debtholder was required, under the revised version of New York Real Property Actions and Proceedings Law § 1304, to make a demand on Defendant prior to the commencement of foreclosure proceedings. Because Plaintiff was required to make a demand, according to Defendant, New York Civil Practice Law and Rules § 206(a) applies and the six year statute of limitations began to run when Plaintiff had the right to make a demand on January 15, 2010 and expired before the commencement of this action on February 27, 2017. Second, Defendant inadvertently failed to include a certification from the custodian of the acceleration letters in its summary judgment submissions to the Court, and the Court should consider those letters to be admissible for summary judgment purposes . Neither of these are grounds for reconsideration of the March Opinion.

4

A. **Applicability of RPAPL § 1304**

New York Real Property Actions and Proceedings Law § 1304 requires lenders to give notice to borrowers at least ninety days before commencing a foreclosure action on a home loan. As of January 15, 2010, this New York law applies to all home loans. Defendant interprets § 1304 extremely broadly and argues that it imposes a demand requirement on Plaintiff which made its claim subject to § 206(a).

In its discretion, the Court declines to grant Defendant reconsideration under this provision for two reasons.

First, Defendant failed to raise this argument at the motion for summary judgment stage. Defendant contends that the Court overlooked § 1304, which he mentions for the first time in his motion for reconsideration. Defendant already extensively briefed the statute of limitations issue at the motion to dismiss stage and he failed to raise the argument that § 1304 is essentially a demand requirement triggering the start of the statute of limitations under § 206(a). "It is implicit in this language that a motion for *reconsideration* cannot assert new arguments or claims which were not before the court on the original motion and consequently cannot be said to have been *considered*." *Koehler v. Bank of Bermuda Ltd.*, No. 18-CV-302(CSH), 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005). Moreover, as discussed below, § 1304 is not controlling law overlooked by the Court which would have changed the results of this action. Rather, Defendant advocates in his motion for reconsideration for a way he would like the Court to interpret § 1304. The Court is not obligated to comply with Defendant's wishes.[2]

---

[2] Defendant cites to no controlling precedent requiring the Court to administer his interpretation of § 1304 as imposing a demand requirement on the holder of a mortgage installment loan. Although, in his reply, Defendant

Second, even assuming that Defendant had argued that § 1304 imposed a demand requirement on Plaintiff in his motion for summary judgment, which he did not, Defendant would not be entitled to reconsideration because § 1304 is not a demand requirement and does not subject Plaintiff to § 206(a). Section 1304 requires lenders to "give notice" to debtors ninety days before commencing legal action that they are in default, but it does not require lenders to demand repayment of the debt. Notice of default and demand for repayment are two distinct principles. Notice is informative. As it is described in § 1304, notice means informing the debtor that he is in default, providing a list of available government services, and warning the debtor that if he has not taken "any actions to resolve this matter within 90 days," the lender may commence legal action. Demand, on the other hand, is imperative. Unlike a notice, a demand requires the recipient to take specified action.

This distinction is clear from decisions in this Circuit and in New York state courts. In *Wilmington Sav. Fund Soc'y, FSB v. Klein*, No. 18-CV-4231(FB)(RER), 2019 WL 1995472, at *2 (E.D.N.Y. Mar. 12, 2019), *Cit Bank, N.A. v. Schiffman*, No. 16-CV-5772(DLI)(RML), 2018 WL 6161971, at *5 (E.D.N.Y. Aug. 24, 2018), and *Pennymac Holdings, LLC v. Lane*, 97 N.Y.S.3d 194, 196 (N.Y. App. Div. 2d Dep't 2019), the lender issued the debtor a § 1304 notice and, separately, a demand letter as required under each respective note. In each of those cases, default occurred after the revisions to § 1304 became enforceable in 2010 yet the demand letter was still considered to be separate and apart from the § 1304 notice. As those three cases demonstrate, a demand is not the same as a notice. If Parties had intended their agreement to be subject to a demand requirement, and therefore § 206(a), they should have included one in the

---

cites to one Second Circuit and a few district and state court cases concerning the notice function of a demand, (Def.'s Reply Mem. of Law in Supp. of Mot. for Reconsideration pp. 4 – 8, ECF No. 82), none of these cases are binding precedent that the Court must consider § 1304 to be a demand requirement.

terms of the instrument. The reality is, as discussed in the March Opinion, the instrument does not contain a demand requirement. *Miss Jones LLC v. Stiles*, No. 17-CV-1450(NSR), 2019 WL 1244945, at *4 (S.D.N.Y. Mar. 18, 2019). Because § 1304 does not impose a demand requirement on Plaintiff and because Defendant does not point to any overlooked fact or controlling law indicating that there was a demand requirement, reconsideration is denied.

B. **Admissibility of the acceleration letters**

Defendant seeks to supplement his motion for summary judgment submissions by adding a certification that was inadvertently not previously provided to the Court. (Decl. and Mem. of Def. Keith Stiles in Supp. of Mot. for Reconsideration ("Def.'s Reconsideration Mem.") pp. 2 & 4 – 6, ECF No. 81-1.) Because Defendant had ample opportunity to present this evidence in support of his motion for summary judgment,[3] the Court declines to to reconsider the admissibility of the acceleration letters based on evidence previously not before the Court.

To allow a movant to submit evidence that was inadvertently excluded from motion for summary judgment submissions in support of a request for reconsideration would declaw the motion for summary judgment phase of litigation; movants would have diminished incentive to submit proper support, confident that they would be allowed a second bite at the apple through reconsideration. *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." (quoting *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998)) (internal quotation marks omitted)). Moreover, precedent in this Circuit clearly shows that inadvertent

---

[3] Defendant admits that the acceleration letter certificate "was available but not presented" at the time of his motion for summary judgment but argues that he did not think that the document was necessary. (Def.'s Reconsideration Mem. p. 4.)

7

exclusion of an argument or a document from materials in support of a motion for summary judgment is simply not grounds for reconsideration.[4] *See, e.g.*, *Williams v. Ford*, No. 14-CV-1181(VAB), 2018 WL 1582510, at *3 (D. Conn. Mar. 30, 2018); *Cohen v. Federal Exp. Corp.*, Nos. 06-CV-482(RJH)(THK), 07-CV-1288(RJH)(THK), 2007 WL 1573918, at *4 (S.D.N.Y. May 24, 2007); *Levin v. Gallery 63 Antiques Corp.*, No. 04-CV-1504(KMK), 2007 WL 1288641, at *2 (S.D.N.Y. Apr. 30, 2007); *Koehler v. Bank of Bermuda Ltd.*, No. 18-CV-302(CSH), 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005).

## II. Motion for appointment of receiver

Based on the evidence before the Court, the Court in its discretion determines that appointment of a receiver is appropriate in this case because it is clearly necessary to protect Plaintiff's interests in the property. *See Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997).

Plaintiff has shown that there is imminent danger that the value of the property would be diminished in value if it is left in Defendant's care. According to the sworn affidavit by Lisa Lancia, Defendant's tenant at the subject property since 2015, Defendant has and continues to fail to appropriately care for the property. (Affidavit of Lisa Lancia ¶¶ 4 & 6 – 7, 9 – 17, 22, ECT No. 78); (Mem. of Law in Supp. of Pl.'s Mot. for the Appointment of a Receiver to Collect Rents ("Pl's Mot. for Receiver") Ex. E Def. 2d Tr. 23:20 – 25, ECF No. 77.) Among other issues, he has allowed leaks in bathrooms to degenerate into leaks through the floors and then ceilings below and has not acted to fix leaks in the roof or damaged gutters. (Affidavit of Lisa Lancia ¶¶ 7 & 12.) These issues alone could jeopardize the structural integrity of the house and significantly diminish the value of the property which was assessed as having a full market value

---

[4] Although the Court cannot consider the acceleration letters at this stage because Defendant did not establish that those letters were admissible for his motion for summary judgment, the letters may be admissible at a hearing or trial provided that Defendant lays the proper foundation.

of $1,200,000 in June 2018. (Def.'s Affidavit in Opp'n to Pl.'s Mot. for the Appointment of a Receiver ("Def.'s Opp'n to Receiver"), Ex. 2, ECF No. 80.) Defendant states that "the premises is well taken care of both by [Defendant] and the tenant" and he attaches a copy of his home repair contract. (Def.'s Opp'n to Receiver ¶ 4(b).) However, he presents no evidence that repairs are actually made as needed.

Additionally, Plaintiff has demonstrated that the harm caused to Plaintiff by a denial of the appointment of a receiver would be greater than harm caused to Defendant.

If the Court declines to appoint a receiver, Plaintiff would be significantly harmed. As discussed above, Defendant does not appear to have been using the rental income to maintain the property and it is likely to diminish in value without intervention. A receiver could collect rent and use the proceeds to make sure the property is properly maintained, retaining its value during the pendency of the foreclosure action.

On the other hand, Defendant would not be significantly harmed by the appointment of a receiver. If, as Defendant states, rents collected are barely enough to cover taxes and maintenance of the premises, Defendant would not be harmed by a receiver taking on those rents for the same purpose. (*See* Def.'s Opp'n to Receiver ¶ 4(d).) If, however, Defendant has been keeping excess rental proceeds from the property and using them for purposes other than the maintenance of the property or payment of his outstanding debts secured by the property, equity requires that Defendant should not be allowed to do so. *See United States v. Trusty Capital, Inc.*, No. 06-CV-8170(KMK), 2007 WL 44015, *8 (S.D.N.Y. Jan. 5, 2007) (holding that the appointment of a receiver was appropriate because the defendant continued to be in default on a large obligation to the plaintiff and did not have any concrete plan for recovering its debts).

Defendant has been collecting approximately $4,000 per month since she began renting the property in 2015, and Defendant admits that Ms. Lancia has not been delinquent on her rent payments. (Pl's Mot. for Receiver Ex. E Def. 2d Tr. 23:20 – 25; 24:2 – 9.) A 2018 lease agreement between Defendant and Ms. Lancia shows that she agreed to pay a yearly rent of $48,000. (*Id.* Ex. G Lancia 2018 Lease.) Receipts confirm that Defendant has been receiving rent payments on the property. (*Id.* Ex. F Receipts.) Defendant also testified that he had other renters in the past, before Ms. Lancia, although he stated that he did not always receive rent payment from those tenants. (Pl's Mot. for Receiver Ex. E Def. 1st Tr. 92:19 – 25; 93:2 – 20.) Despite the rent payments Defendant received from Ms. Lancia alone, which would have amounted to approximately $168,000,[5] Defendant has been in default on his first mortgage for over eleven years (*Id.* EX. I) and on the mortgage held by Plaintiff for over eight years. (*Id.* Ex. A.)

Admittedly, the appointment of a receiver would deprive Defendant of this rental income and therefore his ability to contribute to hefty real estate tax and maintenance costs which, according to Defendant, are currently split between Defendant and the first mortgagee. However, Defendant does not clarify how these fees are split, including what portion Defendant pays. Although he attaches copies of tax status letters to his opposition, (Def.'s Opp'n to Receiver Ex. 2), showing that taxes on the property are current for the county and state taxes, these letters do not prove that Defendant and not the first mortgagee paid those taxes. Even assuming that Defendant pays some of these taxes as well as maintenance fees from the rental income, appointment of a receiver will not cause these fees to go unpaid. Rather, the receiver

---

[5] This assumes, generously to Defendant and applying the $4,000 per month rent Defendant testified to, that Ms. Lancia has paid $4,000 per month from December 2015 through May 2019, when this motion was filed.

will be responsible for paying the portion of the fees that is not paid by the first mortgagee in order to maintain the value of the property.

Accordingly, the Court in its discretion determines that appointment of a receiver is clearly necessary to preserve the property for the duration of this foreclosure action. *See U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop.*, 866 F. Supp. 2d 247, 256 (S.D.N.Y. May 30, 2012).

## CONCLUSION

For the foregoing reasons, Defendant's motion for reconsideration is DENIED. Plaintiff's motion for the appointment of a receiver is GRANTED. It is hereby ORDERED that Plaintiff recommend to the Court three individuals to act as receiver by July 17, 2019. If Defendant wishes to oppose any of Plaintiff's proposed receivers, Defendant shall have until July 19, 2019 to submit a letter opposition.

The Court respectfully directs the Clerk of the Court to terminate the motions at ECF Nos. 77 and 84.

Dated: July 10, 2019  
        White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMAN  
United States District Judge