UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___8/13/2020___
```

MISS JONES LLC,

                           Plaintiff,

       -against-

KEITH STILES, MOY RLTY, LLC, VAN
HASSELT AUTO SERVICE,

                           Defendants.

No. 17-cv-1450 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Miss Jones LLC ("Plaintiff" or "Miss Jones") brings this action against Defendant Keith Stiles ("Defendant" or "Stiles"), as well as Defendants Moy Rlty, LLC and Van Hasselt Auto Service (the "Non-Appearing Defendants"), to foreclose on a mortgage. Presently before the Court is (1) Plaintiff's (a) motion for summary judgment against Defendant Stiles pursuant to Rule 56 of the Federal Rules of Civil Procedure, (b) motion for a default judgment against the Non-Appearing Defendants pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, and (c) motion to appoint a referee pursuant to New York Real Property and Proceedings Law ("NYRPAPL") § 1321 or, in the alternative, to appoint a special master pursuant to Rule 53 of the Federal Rules of Civil Procedure (ECF No. 124); and (2) Defendant Stiles's cross motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (ECF No. 116).

For the following reasons, the parties' motions are DENIED.

## BACKGROUND

### I.   Admissibility of the Acceleration Letters Offered by Defendant

Defendant has submitted, in connection with his cross motion, copies of three letters that he avers were sent to him in 2009. (*See* Aff. of Keith J. Stiles ("Stiles Aff."), ECF No. 121, Ex. C.) To establish the letters' admissibility under the business records exception to the hearsay rule,

Defendant proffers a "Certification" from Pamela Glass ("Glass"), the Records Custodian for PNC Bank, N.A. (the "Glass Certification").  (*Id.* Ex. D.)  Plaintiff challenges the admissibility of these letters on the basis that they constitute inadmissible hearsay.  (Pl. Mem. of Law in Supp. of Mot. for Summ. J. ("Pl. Mot."), ECF No. 130, at 6; Pl.'s Mem. of Law in Opp. to Def.'s Cross Mot. for Summ. J. ("Pl. Opp."), ECF No. 106, at 5.)  Plaintiff specifically maintains that Glass is not a "qualified witness" who can authenticate the documents as business records because, *inter alia*, (1) she does not state she was employed by the bank in 2009 when the letters were allegedly created; (2) she does not state that she has personal knowledge of the creation of the letters in 2009, or if the bank's business procedures were followed in the creation of the letters; (3) she does not allege that the letters were mailed to Defendant; and (4) she does not allege that the bank had a procedure in place to record whether letters were sent to mortgage borrowers.  (Pl. Opp. 6-7.)  The Court concludes that Defendant has established the admissibility of the letters.[1]

Hearsay is an out of court statement offered as evidence to prove the truth of the matter asserted and is typically inadmissible.  Fed. R. Evid. 801(c), 802.  However, this rule is subject to certain exceptions.  Fed. R. Evid. 803, 804.  One such exception is the business-records exception under Federal Rule of Evidence 803(6).  Under the business-records exception, "a record of an act, event, condition, opinion, or diagnosis" will be admitted as hearsay if all of the following criteria are established: (1) "the record was made at or near the time by . . . someone with knowledge"; (2) "the record was kept in the course of a regularly conducted activity of a business"; (3) "making the record was a regular practice of that activity"; and (4) "all these conditions are shown by the

---

[1] Although the Court declined to consider a similar "certification" in its July 10, 2019 Opinion and Order, it did so on the basis that it would be improper to consider new submissions on a motion for reconsideration where that submission could have been disclosed by Defendant in his original motion for summary judgment. (ECF No. 86 at 6-8.)  The Court did not, as Plaintiff implies, reject the content of the certification.

testimony of the custodian or another qualified witness."  Fed. R. Evid. 803(6)(A)-(D).  "The Second Circuit takes 'a generous view' of the business-records exception, construing it to favor admission over exclusion of evidence with 'any probative value at all,' and viewing the 'principal precondition' to admission of documents under Rule 803(6) to be that the records have 'sufficient indicia of trustworthiness to be considered reliable.'"  *Mason Tenders Dist. Council v. Aurash Const. Corp.*, No. 04 Civ. 2427(RCC), 05 Civ. 1891(RCC), 2005 WL 2875333, at *2 (S.D.N.Y. Oct. 31, 2005) (quoting *United States v. Freidin*, 849 F.2d 716, 722 (2d Cir. 1988)).

A person who testifies to the admissibility of business records "need only show that he [or she] is 'familiar with the record-keeping system of the business in question and [knows] how the records were created.'"  *Kasper Glob. Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs., Inc.*, 952 F. Supp. 2d 542, 572-73 (S.D.N.Y. 2013) (internal citation omitted).  "'The custodian need not have personal knowledge of the actual creation of the document. . . .  Nor is there any requirement under Rule 803(6) that the records be prepared by the party who has custody of the documents and seeks to introduce them into evidence.'"  *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) (internal citation omitted).  Rather, all that is required is that the custodian testify "that the document was 'kept in the course of regularly conducted business activity and also that it was the regular practice of that business activity to make the [record].'"  *Ion Audio, LLC v. Bed, Bath & Beyond, Inc.*, No. 15-CV-8292 (KMW), 2019 WL 1494398, at *5 (S.D.N.Y. Apr. 2, 2019) (quoting *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014)); *see also Parker v. Reda*, 327 F.3d 211, 214-15 (2d Cir. 2003) ("[B]usiness records may be admitted notwithstanding the unavailability of the record's author, so long as a 'custodian or other qualified witness' testifies that the document was 'kept in the course of a regularly conducted business

3

activity and also that it was the regular practice of that business activity to make the [record].'"
(quoting *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000)).  When offering business
records on a motion for summary judgment, "the offering party should present an affidavit 'from
a document custodian' that 'explain[s] whether [the records] were kept in the ordinary course of
business[.]'"[2] *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, No. 04-
CV-2293 (JFB)(SMG), 2007 WL 74304, at *3 (E.D.N.Y. Jan. 8, 2007) (quoting *Tradax Energy,
Inc. v. Cedar Petrochem., Inc.*, 317 F. Supp. 2d 373, 378-79 (S.D.N.Y. 2004)).

Here, in the Glass Certification, Glass declares, "under penalties of perjury,"[3] that she is
the "Records Custodian" for PNC Bank, that her responsibilities as "Records Custodian" include
"identifying and authenticating the records of PNC Bank" and National City Bank, which had been
"incorporated into the records of PNC Bank," and that she is "familiar with the manner in which
these records are kept."  (Stiles Aff. Ex. D ¶¶ 1-2.)  Glass goes on to affirm that (1) the letters
offered by Defendant are "true copies of documents kept and maintained by PNC Bank," (2) these
letters were "made at or near the date which appear[] on [them][] by the individual who sent the
letter," (3) these letters were "made and kept in the course of the regularly conducted activity of
PNC Bank, NA and its predecessor, National City Bank," and (4) it was "the regular practice of
PNC Bank, NA and National City Bank to make such records and to place copies of letters in the

---

[2]     Courts have recognized that this is a "technical" and "perfunctory" requirement: "In the typical summary
judgment motion involving business documents, the record contains affidavits, almost certainly drafted by
lawyers, in which the relevant custodian makes a declaration tracking exactly the language of Rule 803(6)."
*See Tradax Energy*, 317 F. Supp. 2d at 379.

[3]     Plaintiff notes that the Glass Certification is unnotarized.  (Pl. Opp. 7.)  Although, in general, "[t]o be
admissible in a summary judgment proceeding, an affidavit must be sworn to before an officer authorized to
administer oaths, such as a notary public," under 28 U.S.C. § 1746 an "unsworn declaration made under
penalty of perjury has the same evidentiary weight as an affidavit if it includes language in substantially the
same form as 'I declare (or certify, verify, or state) that the foregoing is true and correct' followed by a
signature and date of execution."  *Jean v. Acme Bus Corp.*, No. CV 08-4885(ARL), 2012 WL 4171226, at
*5 (E.D.N.Y. Sept. 19, 2012) (internal quotation and citations omitted).

file when they were sent." (*Id.* ¶¶ 3-6.)  The Glass Certification therefore establishes all the requisite elements under Rule 803(6), thereby supporting the three acceleration letters' admissibility under the business-records exception.

To be sure, Plaintiff is correct that Glass does not state she was employed by National City Bank in 2009 or that she has personal knowledge of the letters' creation.  But, as articulated in the previously cited legal authorities, no such attestation is necessary to lay the foundation for admitting business records into evidence.  Nor is it relevant, for purposes of establishing the letters' *admissibility as business records*, whether or not Glass alleged that the letters were mailed to Defendant or that National City Bank had a procedure in place to record when items were returned undeliverable, and Plaintiff cites to no authority to the contrary.[4]  At bottom, Defendant has met the "perfunctory" requirement of establishing the admissibility of the acceleration letters.  The Court will consider them in adjudicating the parties' respective motions.

## II.   Factual Background

The following facts are drawn from the parties' Rule 56.1 submissions and the record. (Pl.'s 56.1 Statement ("Pl. 56.1"), ECF No. 125; Def.'s 56.1 Statement ("Def. 56.1"), ECF No. 131.)  They are undisputed unless otherwise noted.

### A.  Defendant's Mortgage and Subsequent Default

i.   *Execution of the Mortgage and Subsequent Assignments*

Stiles was the owner of the property located at 136 Elmwood Road, South Salem, New York (the "Mortgage Premises").  (Def. 56.1 ¶ 2; Pl. 56.1 ¶ 4; Decl. of Michael Zimmerman in

---

[4]   That said, to the extent Defendant offers the Glass Certification as proof that the letters were sent by either National City Bank or PNC Bank, the Court will decline to consider the certification for that purpose. *See generally* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Supp. of Pl. Mot. for Summ. J. ("Zimmerman Decl."), ECF No. 127, Ex. B at 1.)  On July 7, 2007, Stiles executed an Equity Reserve Agreement (the "Note") and a Credit Line Mortgage secured by the Mortgage Premises (the "Mortgage") to obtain a line of credit up to the amount of $350,000 from National City Bank ("NCB").  (Pl. 56.1 ¶¶ 3-4; Def. 56.1 ¶ 3; Zimmerman Decl. Exs. A & B.)  On October 25, 2007, the Note and Mortgage were duly recorded in the office of the Westchester County Clerk.  (Def. 56.1 ¶ 6, Zimmerman Decl. Ex. A at 7; *id.* Ex. B at 7.)

Eventually, on September 3, 2010, the Note and Mortgage were duly assigned and transferred from PNC Bank, N.A. ("PNC"), successor by merger to NCB, to DBI/ASG Mortgage Holdings LLC.  (Aff. Brandon Ramos in Supp. of Mot. for Summ. J. ("Ramos Aff."), ECF No. 129, ℗ 10; Zimmerman Decl. Ex. B at 6-7.)  DBI/ASG, in turn, assigned and transferred the Note and Mortgage by written assignment to Miss Jones on September 16, 2016.  (Ramos Aff. ℗ 11; Zimmerman Decl. Ex. B at 8-9.)  Six days later, on September 22, 2016, the Note was physically transferred to Miss Jones, and, to date, Miss Jones continues to own the Note and Mortgage. (Ramos Aff. ℗ 12; Pl. 56.1 ℗ 9.)  The assignment was recorded with the Westchester County Clerk on October 11, 2016.  (Ramos Aff. ℗ 11; Zimmerman Decl. Ex. B at 8.)

ii.   *Stiles's Default*

Pursuant to the Note, Stiles made monthly payments of interest to NCB in amounts prescribed therein.  (Def 56.1 ¶ 8; *see also* Stiles Aff. ¶ 5.)  Stiles's last payment to NCB was made on July 31, 2008, and he moved out of the Mortgage Premises that same month.  (Def. 56.1 ¶ 9; Stiles Aff. Ex. E ℗ 9; *see also* Zimmerman Decl. in Opp. to Def.'s Cross Mot. for Summ. J. ("Zimmerman Opp."), ECF No. 123, Ex. C ("Stiles Dep. Tr.") at 12:10-22.)  Since July 31, 2008, Stiles has not made any further payment to the bank or its successors in interest (Def. 56.1 ¶10;

Stiles Aff. ¶ 5; Ramos Aff ¶ 17[5]), nor has he applied for a modification, extension, or reinstatement of the Mortgage (Def. 56.1 ¶ 12; Stiles Aff. ¶ 8).  Simply put, Stiles has remained in default for over eight and a half years.  (Def. 56.1 ¶ 14; Pl. 56.1 ¶ 7; Ramos Aff. ¶¶ 17, 24.)

### iii.   *The Note and the Mortgage's Terms Regarding Default*

The Note and Mortgage contain terms with respect to nonpayment and default. (Def. 56.1 ¶ 13.)  For example, the Note provides that "[NCB] can terminate [Stiles's line of credit] and require [him] to pay the entire outstanding balance in one payment if [he] breach[ed] a material obligation of th[e] Agreement" by, *inter alia*, "not meet[ing] the repayment terms of th[e] Agreement."  (Zimmerman Decl. Ex. A at 3; Ramos Aff. ¶ 18.)

Meanwhile, paragraph 9 of the Mortgage, entitled "Remedies on Default," provides that, upon default:

> [The] Lender may accelerate the Secured Debt and foreclose th[e] Security Instrument in a manner provided by law if [Stiles] is in default. . . .

> At the option of [the] Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or any time thereafter. . . .

(Zimmerman Aff. Ex. B at 4; Ramos Aff. ¶ 19; *see also* Def. 56.1 ¶ 13.)

### iv.   *Miss Jones's Attempt to Foreclose*

On August 29, 2016, Miss Jones's servicer mailed Stiles, at the Mortgage Premises' address, a Notice of Attempt to Collect Debt ("Default Notice") via first class and return receipt certified mail.  (Pl. 56.1 ¶ 5; Zimmerman Decl. Ex. C; Ramos Aff. ¶ 20.)  The servicer also mailed Stiles a 90-day Pre-Foreclosure Notice, which was returned as undeliverable.  (Pl. 56.1 ¶ 6;

---

[5]     The Ramos Affidavit states that, although Defendant failed to make his payment on August 1, 2008, his default date was rolled back to February 1, 2011, rendering February 1, 2011 as the actual default late for the Note and Mortgage.  (Ramos Aff. ¶ 17.)  Defendant disputes this, seemingly implying that the default date should be on or about August 1, 2018. (Def.'s Reply to Pl. 56.1, ECF No. 132, ¶ 1.)

Zimmerman Decl. Ex. D.)  At the time of these notices, there was due and owing to Miss Jones the unpaid sum of $338,327.00 plus various additional fees and advances.  (Ramos Aff. ⁋ 26; Zimmerman Decl. Ex. F ⁋ 33.)

### B.  NCB's Letters Accelerating the Mortgage After Default

Several letters in the record indicate that NCB, and its successor PNC, intended to accelerate the Mortgage in 2009.  (Stiles Aff. Ex. C.)  Specifically, in letters dated July 11, 2009 and October 24, 2009 and addressed to Stiles at the Mortgage Premises, NCB wrote:

> Effective immediately, the Account is hereby accelerated and we hereby demand payment in full of the entire amount owing on the Account as described below.
>
> As of the date of this letter your Account has an accelerated balance of $347,561.96. This balance includes accrued interest and outstanding late charges as of the date of this letter. . . .
>
> Since the balance of your Account is accelerated, nothing less than full payment of the entire indebtedness is now acceptable.

(Def. 56.1 ⁋ 15; Stiles Aff. Ex. C at 1, 3.)  PNC sent a third letter, dated December 14, 2009 and addressed to Stiles at the Mortgage Premises, which included identical language to these previous two letters.  (Def. 56.1 ⁋ 17; Stiles Aff. Ex. C at 5.)

The parties fiercely dispute whether these letters were mailed out and, if they were, whether Stiles received them in 2009.  Stiles maintains that he received copies of these letters on or around their respective 2009 dates.  (Stiles Aff. ⁋ 5; *id.* Ex. E ⁋ 4.)  To this end, when asked if he had recalled seeing "the original document dated July 11, 2009," Stiles testified that he believed he received a default letter from NCB around that time.  (*See* Stiles Dep. Tr. 67:7-12, 70:24-71:5.) And when asked how he had received the October 24, 2009 letter, Stiles testified, "Originally by mail, and then by facsimile from National City."  (*Id.* at Tr. 69:13-24, 70:9-71:17.)

But as Miss Jones notes, Stiles had moved out of the Mortgage Premises by 2008 and the letters, sent in 2009, were addressed to his old address.  As such, Miss Jones contends that, in the absence of any proof of mailing or receipt, the record does not support a conclusion that the letters were mailed, or that Stiles received the letters, in 2009.  (Pl. Mem. of Law in Opp. to Def. Cross Mot. for Summ. J. ("Pl. Opp."), ECF No. 105, at 10.)  In support, Miss Jones points to a letter postmarked September 18, 2009, which was "Return[ed] to Sender" because "Stiles Moved" and "Left No Address," indicating that the United States Postal Service was unable to forward it. (Zimmerman Opp. Ex. D.)  Miss Jones also cites testimony by Stiles during which he noted that the Mortgage Premises received some mail that was not forwarded, although Stiles later noted that he would have "people pick up mail for [him]" and, at times, "hold it for [him] while [he] was in New York."  (Stiles Dep. Tr. at 90:25-91:10.)

### III.    Procedural Background

Miss Jones commenced this lawsuit against Defendants Stiles, Moy Rlty, LLC, and Van Hasselt Auto Services on February 27, 2017 by filing a complaint, civil cover sheet, and Notice of Certificate of Merit.  (ECF Nos. 1-2, 6.)  Electronic summons was issued for each defendant on that same day (ECF Nos. 7-9), and returned executed on March 20, 2017 and March 30, 2017, respectively, as to the Non-Appearing Defendants, and on May 11, 2017, as to Stiles.  (ECF Nos. 13, 15, 17.)  On July 18, 2017, Stiles filed his answer, asserting (1) an affirmative defense that the action was barred by the applicable statute of limitations, and (2) a counterclaim, pursuant to NYRPAPL § 1501(4), seeking to cancel the Mortgage.  (ECF No. 23.)  Conversely, although counsel for Defendant Van Hasselt Auto Service filed a notice of appearance (ECF No. 16), neither of the Non-Appearing Defendants have filed an answer or otherwise responded to the complaint.

To date, Miss Jones has not obtained a Clerk's Certificate of Default as to the Non-Appearing Defendants.

On March 25, 2018, Stiles filed a motion for summary judgment to dismiss the complaint and for a judgment on his counterclaim.  (ECF No. 37.)  The Court issued its Opinion & Order on March 18, 2019 (the "2019 Opinion").  (ECF No. 76.)  After rejecting procedural objections to Stiles's motion, the Court then turned to Stiles's contention that Miss Jones's foreclosure claim was barred by the six-year statute of limitations under New York Civil Practices Law and Rules ("NYCPLR") § 213(4).  (*Id.* at 7.)  The Court first considered Stiles's contention that, under NYCPLR § 206(a), the statute of limitations had accrued in 2008 when demand could have been made by NCB as a result of Stiles missing his first interest payment.  (*Id.* at 8.)  The Court held that Miss Jones was not required to mail a notice of default, or otherwise demand repayment, prior to commencing its action, and, as a result, section 206(a) did not apply.  (*Id.* at 8-9.)

The Court then turned to Stiles's second contention that the statute of limitations should run from the date of the first acceleration letter, which was purportedly sent to him in July 2009. (*Id.* at 12.)  The Court, however, did not reach the merits of his argument, instead concluding that, although it was permissible to admit duplicates of the letters that formed the basis of Stiles's affirmative defense under the Best Evidence Rule, the letters were nevertheless inadmissible hearsay.  (*Id.* at 12-14, 17.)  Specifically, the Court concluded that Stiles had failed to establish that the letters were admissible under the business-records exception because he did not offer testimony from a "qualified witness" that affirmed "that the acceleration letters were made at or around the time of the defaults, the letters were filed as part of regular business, and [] the creation of the letters was part of regular business practice."  (*Id.* at 16-17.)  In so holding, the Court

expressly reserved judgment on whether there was a genuine issue of material fact as to whether Stiles received the acceleration letters.  (*Id.* at 17 n.6.)

On May 27, 2019, Stiles filed a motion for reconsideration of the Court's 2019 Opinion, arguing that (1) under RPAPL § 1304, Miss Jones, the debtholder, was required to make a demand on Defendant prior to commencing foreclosure proceedings, and (2) he had inadvertently failed to include a certification from the custodian of the acceleration letters in his summary judgment submission to the Court.  (ECF No. 84.)  In support of the second argument, Stiles provided a copy of a certification from Glass.  (ECF No. 84-3.)  The Court issued its Opinion and Order on July 10, 2019 (the "Reconsideration Opinion").[6]  (ECF No. 86.) The Court first declined to grant reconsideration under Stiles's first argument, holding that (a) Stiles failed to raise the argument in his motion for summary judgment, and (b) section 1304 only imposes a requirement that creditors give ninety days' notice that the debtor is in default before commencing legal action, not a requirement that the creditor demand repayment.  (*Id.* at 5-6.)  The Court then rejected Stiles's attempt to supplement his motion for summary judgment with a certification that was inadvertently omitted during the summary judgment briefing.  (*Id.* at 6.)  The Court determined that permitting Stiles to submit evidence inadvertently excluded from his motion for summary judgment on a motion for reconsideration would "declaw the motion for summary judgment phase of litigation." (*Id.*)  Even so, the Court noted that "the letters may be admissible at a hearing or trial provided that Defendant lays the proper foundation."  (*Id.* at 8.)

---

[6]     In addition to Defendant's motion for reconsideration, the Court also ruled on Miss Jones's May 24, 2019 motion to appoint a receiver (ECF No. 77.)  The Court concluded that, based on the evidence before it, appointment of a receiver was appropriate to protect Plaintiff's interest in the property.  (ECF No. 86 at 8.) The Court subsequently entered an Order appointing a receiver on September 27, 2019 (ECF No. 95), thereafter amending the order on December 5, 2019 (ECF No. 102).

Following its Reconsideration Opinion, on September 24, 2019, the Court granted Miss Jones leave to file a motion for summary judgment on its claim.  (ECF No. 94.)  Miss Jones thereafter filed its motion on January 21, 2020, while Stiles filed a cross motion for summary judgment in response.  (*See* ECF Nos. 103 & 104.)[7]  This Opinion and Order followed.

## LEGAL STANDARD

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Thus, summary judgment will not lie where there is a "dispute[] over facts that might affect the outcome of the suit under the governing law" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The Supreme Court has made clear that 'at the summary judgment stage the judge's function is not [] to weigh the evidence and determine the truth of the matter[.]'"  *Westinghouse Elec. Corp. v. N.Y.C. Trans. Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249).  Rather, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.  In deciding a motion for summary judgment, courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor."  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal citation and quotations omitted).

The moving party bears the initial burden of pointing to evidence in the record "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

---

[7]     After being notified of deficient docket entries, the parties refiled their respective motion papers on February 10, 2020 (Def.'s Cross Mot., ECF No. 116) and February 28, 2020 (Pl.'s Mot. for Summ. J., ECF No. 124).

477 U.S. 317, 323 (1986).  The moving party may support an assertion that there is no genuine dispute by showing "that [the] adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248 (internal citation and quotation marks omitted).

The party asserting that a material fact is genuinely disputed must support his or her assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  To this end, "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).  But the mere fact that a non-movant's factual allegations in opposition are "self-serving" does not automatically render them insufficient to defeat summary judgment.  *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998).

That said, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).  In addition, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  *Anderson*, 477 U.S. at 252.

## DISCUSSION

Plaintiff contends that it has satisfied all the *prima facie* requirements of its foreclosure claim.  (Pl. Mot. 3-7.)  Relying on the basis that it is entitled to foreclosure, Plaintiff, in turn, seeks

an order from this Court (1) appointing a referee to calculate the sums due from the foreclosure and (2) striking Defendant's affirmative defense and counterclaim. (*Id.* at 7-11.) Separately, Plaintiff contends that it is entitled to default judgment against the Non-Appearing Defendants because of their failure to interpose an Answer in this action. (*Id.* at 9.)

In response, Defendant challenges Plaintiff's motion by cross moving for summary judgment on his affirmative defense that Plaintiff's claim is barred by the statute of limitations. (Def. Mot. 5-7.) And, assuming the statute of limitations has run, Defendant seeks to expunge the mortgage. (*Id.* at 11-12.) Plaintiff preliminarily challenges Defendant's cross motion on various procedural grounds. (Pl. Opp. 2-3.) Then, turning to the substance, Plaintiff contends that questions of fact exist as to whether the statute of limitations bars its claim. (*Id.* at 7-13.) Specifically, Plaintiff maintains that a question of fact exists as to whether (1) NCB and/or PNC mailed the acceleration letters to Defendant in 2009 and (2) Defendant received those letters. (*Id.*)

The Court considers these various arguments in turn.

## I.   Plaintiff's Procedural Challenges to Defendant's Cross Motion

At the outset, Plaintiff advances two procedural arguments for why the Court should disregard Defendant's cross motion for summary judgment. *First*, Plaintiff contends that Defendant did not oppose or even address Plaintiff's motion for summary judgment in his cross motion. (Pl. Opp. 2-3.) *Second*, Plaintiff maintains that Defendant's cross motion fails to comply with this Court's Individual Rules of Practice in Civil Cases.[8] (Pl. Opp. 3-4.)

---

[8] Plaintiff also contends that Defendant's cross motion should be denied because this Court previously rejected his affirmative defense in its two previous opinions. (Pl. Opp. 4-5.) But this Court's prior consideration of Defendant's affirmative defense came down to an adjudication of an evidentiary issue. (ECF No. 76 at 14-17.) Moreover, the Reconsideration Opinion did not otherwise touch on any substantive issue, instead relying on the fact that Defendant could not offer the custodian's certification for the first time on a motion for

As to whether Defendant failed to "oppose" Plaintiff's motion, the Court notes that Defendant's cross motion is effectively an opposition. Although it is true that Defendant concedes many of the facts of Plaintiff's *prima facie* case, the cross motion plainly re-asserts Defendant's statute of limitations affirmative defense and points to evidence in the record in support. Such an assertion of an affirmative defense is a permissible way to oppose a motion for summary judgment. *See, e.g.*, *Rozek v. N.Y. Blood Ctr.*, 925 F. Supp. 2d 315, 343 (S.D.N.Y. 2013) (considering the merits of an affirmative defense raised in opposition to summary judgment and granting summary judgment in favor of defendants upon a review of the record); *Astor Holdings, Inc. v. Roski*, 325 F. Supp. 2d 251, 260-61 (S.D.N.Y. 2003) (considering the merits of an affirmative defense raised for the first time at summary judgment stage).

The Court next turns to Defendant's failure to move for a pre-motion conference prior to asserting his cross motion. As Plaintiff correctly notes, "[a] pre-motion conference with the Court is required before making any [] motion." *See* Rule 3(A)(ii) of the Court's Individual Practices in Civil Cases. Nevertheless, the Court has "broad discretion to determine whether to overlook a party's failure to comply with" its individual rules. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Here, there is no dispute that Defendant failed to comply with this Court's individual rules by filing a cross motion without seeking a pre-motion conference. (*See* Pl. Opp. 3; Def.'s Mem. of Law in Supp. of Cross Mot. for Summ. J. ("Def. Mot."), ECF No. 118, at 4.) Yet Defendant's cross motion and the affirmative defense it raises comes as no surprise to Plaintiff; indeed, Plaintiff expressly anticipated that Defendant would raise his statute of limitations

---

reconsideration. As Defendant has now laid the proper foundation to admit the three acceleration letters, the remaining legal issues underlying his affirmative defense and counterclaim are ripe for adjudication. (*See id.* at 17 (declining to determine whether a "there [was] a genuine issue of material fact as to whether Defendant received the acceleration letter" because the letters were inadmissible").)

affirmative defense (*see* Pl. Mot. 6-7). As such, Plaintiff cannot seriously contend it suffers any prejudice in its ability to respond and defend against Defendant's cross motion. *See Roman v. RGS Fin., Inc.*, No. 2:17-cv-04917 (ADS)(AKT), 2019 WL 4247551, at *3-4 (E.D.N.Y. Sept. 6, 2019) (considering the merits of a cross motion submitted in violation of the court's individual rules where there was no surprise or prejudice warranting the punitive remedy of striking the motion). The Court therefore declines to strike Defendant's cross motion on this procedural defect.[9]

## II.    Plaintiff's Entitlement to Foreclosure

"Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the [m]ortgagor has failed to make payments due under the Note." *Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.*, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001) (citing *Bank Leumi Tr. Co. of N.Y. v. Lightning Park, Inc.*, 215 A.D.2d 246, 247 (1st Dep't 1995); *FGH Realty Credit Corp. v. VRD Realty Corp.*, 231 A.D.2d 489, 490 (2d Dep't 1996)). In other words, "a plaintiff makes a *prima facie* case . . . where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor." *Wells Fargo Bank, N.A. v. Ullah*, No. 13-CV-485 (JPO), 2015 WL 3735230, at *4 (S.D.N.Y. June 15, 2015) (quoting *E. Sav. Bank, FSB v. Bright*, No. 11-cv-1721 (ENV)(MDG), 2012 WL 2674668, at *3 (E.D.N.Y. July 5, 2012)). If the plaintiff has established its prima facie case, the defendant must make an affirmative showing in order to overcome the plaintiff's presumptive right

---

[9]    In any event, even if Defendant had asserted his affirmative defense by way of an opposition rather than a formal cross motion, the Court still has the authority to adjudicate its merits. Courts have routinely held that "[i]n considering a motion for summary judgment, if [the court's] analysis reveals that there are no genuine issues of material fact, but that the law is on the side of the non-moving party, [it] may grant summary judgment in favor of the non-moving party even though it has made no formal cross-motion." *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 588 (S.D.N.Y. 2018) (quoting *Orix Credit All, Inc. v. Horten*, 965 F. Supp. 481, 484 (S.D.N.Y. 1997)).

to foreclose.  *See Regency Sav. Bank*, 139 F. Supp. 2d at 465 (citing *First Nat'l Bank of Highland v. J & J Milano, Inc.*, 160 A.D.2d 670, 671 (2d Dep't 1990)).

Here, Plaintiff has plainly established its *prima facie* entitlement to foreclosure.  It has provided documentary evidence of the Mortgage and the Note, both of which Plaintiff now owns by way of various assignments.  (Zimmerman Decl. Exs. A & B; Ramos Aff. ⁋⁋ 10-12; Def. 56.1 ⁋ 7).  More critically, neither party disputes that Defendant defaulted on the debt by failing to make payments on the Note by at the earliest August 1, 2018.  (*See* Ramos Aff. ⁋⁋ 17, 28; Zimmerman Decl. Ex. C; Def. 56.1 ⁋⁋ 8-12, 14.)  Accordingly, it is on Defendant to make an affirmative showing to overcome Plaintiff's presumptive right to foreclose.  To do so, Defendant contends that Plaintiff's action is barred by the statute of limitations.  (Def. Mot. 5-11.).  Because the statute of limitations is an affirmative defense, under New York law, Defendant "bears the burden of establishing by *prima facie* proof that the limitations period has expired since the plaintiff's claim[] accrued."  *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) (citing *Hoosac Valley Farmers Exch., Inc. v. AG Assets, Inc.*, 168 A.D.2d 822, 823 (3d Dep't 1990)).  The burden then shifts to Plaintiff to establish that the limitations period should be tolled.  *Id.*

Under NYCPLR § 213(4), "an action upon a bond or note, the payment of which is secured by a mortgage upon real property, or upon a bond or note and mortgage so secured, or upon a mortgage of real property, or any interest therein" must be commenced within six years.  Typically, the statute of limitations "begins to run from the due date for each unpaid installment."  *Costa v. Deutsche Bank Nat'l Tr. Co. for GSR Mortg. Loan Tr. 2006-OA1*, 247 F. Supp. 3d 329, 340 (S.D.N.Y. 2017) (quoting *Plaia v. Safonte*, 45 A.D.3d 747, 748 (2d Dep't 2007)).  However, "once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to

run on the entire debt." *CIT Bank, N.A. v Nwanganga*, 328 F. Supp. 3d 189, 201 (S.D.N.Y. 2018) (quoting *Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 982 (2d Dep't 2012)).

Where, as here, "the terms of the note and mortgage provide that 'the acceleration of a mortgage debt on default is made optional with the holder of the note and the mortgage, some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision." *21st Mortg. Corp. v. Balliraj*, 177 A.D.3d 687, 688 (2d Dep't 2019) (quoting *Burke*, 94 A.D.3d at 982-983). Until such action is taken, "the provision has no operation," and the statute of limitations will not begin to run on the entire debt. *See id.* at 688-89; *Burke*, 94 A.D.3d at 982-983. One such way that an acceleration may occur is when the creditor or the creditor's servicer transmits an acceleration notice to the borrower. *Milone v. US Bank Nat'l Assoc.*, 164 A.D.3d 145, (2d Dep't 2018). In such cases, "[t]o be effective, the acceleration notice to the borrower must be clear and unequivocal." *Id.* (citing *Nationstar Mortg., LLC v. Weiblum*, 143 A.D.3d 866, 867 (2d Dep't 2016); *Burke*, 94 A.D.3d at 983; *Sarva v. Chakravorty*, 34 A.D.3d 438, 439 (2d Dep't 2006)). Courts in New York have also concluded, in similar contexts as this case, that the borrower must receive actual notice of the lender's election to accelerate (or de-accelerate) the mortgage. *See, e.g.*, *Wells Fargo Bank, N.A. v. Machell*, 55 Misc. 3d 1214(A), 58 N.Y.S.3d 876 (Table), at *4 (concluding that the lender failed to give "actual notice" where it mailed its de-acceleration notice to an incorrect address at which it knew plaintiff no longer resided); *Citimortgage, Inc. v. Ramirez*, 59 Misc. 3d 1212(A), 101 N.Y.S.3d 699 (Table), at *2 (N.Y. Sup. Ct. N.Y. Cty. Apr. 5, 2018) (explaining that where a mortgage holder who has elected to accelerate the entire debt chooses to revoke that option, it must, among other things, "give actual notice to the borrower that the acceleration has been revoked"); *Bank of N.Y. v.*

*Hutchinson*, 57 Misc. 3d 1204(A), 66 N.Y.S.3d 652 (Table), at *6 (N.Y. Sup. Ct. Kings Cty. Sept. 18, 2017) (explaining that the "election to accelerate the mortgage must consist of a notice of election to the borrower or some overt act that is *clear and unequivocal* of such election" (emphasis in original)).

Here, the three letters from NCB and PNC are clear and unequivocal:  Defendant's account was "accelerated" and "nothing less than full payment of the entire indebtedness [was] now acceptable." (Stiles Aff. Ex. C.)  Thus, if these letters were, in fact, transmitted to Defendant, the Court would have little trouble concluding that the mortgage debt had been accelerated.  And given that the letters were dated July 11, 2009, October 24, 2009, and December 14, 2009 (*id.*), the statute of limitations would plainly have begun to run in 2009 if these letters were mailed out to and received by Defendant.  The question before the Court then is whether the letters were mailed and whether defendant received them.

Defendant has consistently maintained, via his affidavits and in his prior testimony,[10] that he received the above-referenced letters from NCB and PNC in or around 2009. (Stiles Aff. ¶ 6;

---

[10]     Plaintiff contends that Defendant's current representation that he received the letters in 2009 is inconsistent with his previous testimony.  (Pl. Opp. 9-10.)  Plaintiff specifically contends that Defendant (1) was "unable to testify that he remembers receiving letters in the year 2009, (2) testified that he did not receive all mail that was sent to the Mortgage Premises, and (3) was unable to remember the basic circumstances of his mortgage loan from eight years prior.  (*Id.*)  Turning to the first contention, as noted above, the record does contain multiple instances of Defendant recalling that he had received the letters that were sent to him by mail, but even if Defendant's recollection was, at times, less than certain, his testimony is not *inconsistent* with his current representations.  As to the second point, although Defendant concedes that some mail was not forwarded to him, he also explains that he had other avenues to receive that mail, such that this current position is also not inconsistent with his prior testimony.  (*See* Stiles Dep. Tr. at 90:25-91:11.)  Finally, Defendant's recollection of certain "basic" information during his testimony does not impact the inquiry of whether Defendant's present contentions are inconsistent with his prior testimony.  Regardless, insofar as Plaintiff asks this Court to draw an inference from Defendant's ability (or lack thereof) to recall information, such an inference would result in the Court making an improper credibility assessment on a motion for summary judgment. *See Weyant v. Okst*, 101 F.3d 845, 854-55 (2d Cir. 1996) (explaining that "in ruling on a motion for summary judgment, the district court is not to weigh the evidence" and must "eschew credibility assessments").

Stiles Aff. Ex. E ∥ 3; Stiles Dep. Tr. at 45:19-22, 67:7-12, 69:13-24, 70:24-71:17, 82:5-25.)  And although the letters make it clear that the Mortgage Premises were the intended destination of the letters (Stiles Aff. Ex. C), Defendant has supported his position by affirming that, even though he did not live at the Mortgage Premises on the dates the letters were purportedly sent, he would have generally obtained the letters either via mail forwarding or by picking them up on a trip to New York.[11]  (Stiles Aff. ∥ 9; *see also* Stiles Dep. Tr. at 90:25-91:11.)

To be sure, Defendant acknowledges that he does not have the original acceleration letters, as they were "either discarded . . . or misplaced."  (Stiles Aff. Ex. E ∥ 4; *see also* Stiles Dep. Tr. at 82:5-11.)  And the record is otherwise devoid of any documentary evidence establishing proof of mailing or receipt.  Yet, viewing the totality of the documentary and testimonial evidence in the record, Defendant has seemingly met the *prima facie* burden for establishing his statute-of-limitations affirmative defense, which precludes summary judgment in favor of Plaintiff.  *See Deutsche Bank Nat'l Tr. Co. v. Desilva*, 175 A.D.3d 1221, 1222 (1st Dep't 2019) (concluding that a supported affirmative defense raised in opposition to summary judgment could create a question of fact as to plaintiff's entitlement to foreclosure); *JP Morgan Chase Bank, N.A. v. Salmon*, 154 A.D.3d 603, 603 (1st Dep't 2017) (affirming motion court's determination that defendant's affirmative defense raised issues of fact in plaintiff's foreclosure action).

---

[11]     Plaintiff argues that Defendant testified that he received the three letters via facsimile. (Pl. Opp. 11-12.)  But the testimony indicates that Defendant had received *copies* of the letters via facsimile after contacting PNC. (*See, e.g.*, Stiles Dep. Tr. at 69:21-70:8, 75:12-24, 82:2-25.)  Conversely, Defendant did represent during his testimony that he had received the letters "[o]riginally by mail."  (*Id.* at 69:13-24.)  Specifically, Defendant explains that he recalled receiving the original acceleration letters, searching for them in his personal records, and upon realizing he had not retained them, reaching out to PNC Bank, who in turn faxed him copies of the letters.  (Stiles Aff. Ex. E ∥∥ 4-5 & Ex. A.)

Nevertheless, in opposing Defendant's cross motion for summary judgment, Plaintiff contends that there is a question of fact about whether Defendant received the letters in question, and it supports its position by submitting a copy of correspondence that had been sent to Defendant at the Mortgage Premises' address but was returned to sender. (Pl. Opp. 10; Zimmerman Opp. Ex. D.) Relying on the fact that the letter indicates that Defendant "left no address," Plaintiff extrapolates more broadly that none of Defendant's mail could have been forwarded to him. (Pl. Opp. 10.) Defendant, in response, maintains that this evidence amounts to mere speculation that Defendant did not receive the letters at issue. (Def. Mot. 10.) And, anticipating Plaintiff's argument, Defendant counters with documents from NCB that he purports to have received during the relevant time period, even though the documents were addressed to the Mortgage Premises. (*See* Def. Mot. 10; Stiles Aff. Ex. E, at Ex. D.)

Ultimately, the Court is presented with a remarkably close question, one upon which this entire case hinges. However, when construing the evidence in a light most favorable to the non-moving party (*i.e.*, Plaintiff in the context of Defendant's cross motion) and drawing reasonable inferences in its favor—as this Court must on a motion for summary judgment—Plaintiff has narrowly met its burden of establishing a material question of fact regarding Defendant's entitlement to judgment on its affirmative defense. Accordingly, because a question of fact exists as to whether the statute of limitations has run, the Court DENIES Plaintiff's motion for summary judgment on its foreclosure claim and DENIES Defendant's cross motion for summary judgment on its affirmative defense.

### III.   Plaintiff's Motion for Default Judgment Against the Non-Appearing Defendants

In addition to its motion for summary judgment against Defendant, Plaintiff also seeks an entry of default judgment against the Non-Appearing Defendants pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Plaintiff's motion is both premature and in violation of this Court's individual rules.

Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, *the clerk must enter the party's default*." Fed. R. Civ. P. 55(a) (emphasis added). Local Civil Rule 55.1 further provides that "[a] party applying for entry of default under Fed. R. Civ. P. 55(a) shall file: (a) a request for a Clerk's Certificate of Default; and (b) an affidavit demonstrating" three elements: (1) "the party against whom a notation of default is sought is not an infant, in the military, or an incompetent person"; (2) "the party has failed to plead or otherwise defend the action"; and (3) "the pleading to which no response has been made was properly served." Local Civil Rule 55.1(a)-(b). The party seeking an entry of default must also provide "[a] proposed Clerk's Certificate of Default." *Id.* Separately, once a certificate of default is issued, Rule 3(J) of this Court's Individual Practices instructs litigants to apply for a default judgment by an Order to Show Cause.

Here, a review of the docket reveals that Plaintiff has yet to obtain a signed Clerk's Certificate of Default as to the Non-Appearing Defendants. "[W]ithout a certificate of default, no basis exists for granting [Plaintiff's] motion for judgment by default," and thus the Court has "an adequate basis to deny [its] motion" on this procedural issue alone. *Alli v. Steward-Bowden*, No. 11 Civ. 4952(PKC)(KNF), 2012 WL 4450987, at *1-2 (S.D.N.Y. Sept. 25, 2012) (internal

quotations omitted); *see also Saint Tropez Inc. v. Ningbo Maywood Indus. and Trade Co., Ltd.*, No. 13 Civ. 5230(NRB), 2014 WL 3512807, at *9 (S.D.N.Y. July 16, 2014) ("If plaintiff wishes to pursue a default judgment against Retro Fox, it must first seek a certificate of default from the Clerk of Court and then submit a proposed order of default judgment to this Court pursuant to Rule 55 and Local Civil Rule 55.2."). Moreover, even if Plaintiff had obtained the necessary certificates of default, it has not sought default judgment by an Order to Show Cause, as is required by the Court's individual rules.

As Plaintiff has not followed these procedural requirements, the Court DENIES its motion for default judgment without prejudice to renew upon compliance with the applicable Federal and Local Rules. Any application for default judgment *must* be made by an Order to Show Cause that is returnable to the Court and otherwise complies with its individual rules.

## IV.    Plaintiff's Motion for the Appointment of a Referee or Special Master

Plaintiff's motion for the appointment of a referee or a special master is premised on its entitlement to summary judgment and default judgment. (*See* Pl. Mot. 9-11.) Because a question of fact remains as to whether the statute of limitations has run on the entire debt and has denied Plaintiff's motion for default judgment for failure to comply with applicable federal and local rules, any decision on appointing a referee or special master is premature. The Court DENIES Plaintiff's motion for the appointment of a referee or special master.

## V.    Defendant's Motion to Expunge the Mortgage

As this Court previously explained, Defendant's argument that the Court should expunge the mortgage from the premises assumes that the Court would determine that Plaintiff's action fell outside the statute of limitations. (ECF No. 76 at 17.) But, because the Court holds that there is a material question of fact as to whether the statute of limitations has run on the entire debt, it cannot

expunge the mortgage at this time.  The Court DENIES Defendant's cross motion for summary judgment on its counterclaim.

## CONCLUSION

For the foregoing reasons, Plaintiff's motions for summary judgment, for default judgment, and for the appointment of a referee or special master are DENIED.  Defendant Keith Stiles's cross motion for summary judgment on his affirmative defense and counterclaim is likewise DENIED. The parties are directed to appear for a pretrial conference on October 9, 2020 at 11:00 am.

A decision on Defendant Stiles's pending motion to modify the Court's December 5, 2019 Order Appointing a Receiver (ECF No. 150) and Plaintiff's cross motion for contempt (ECF No. 137) will be issued at a later date.

The Clerk of Court is directed to terminate the motions at ECF Nos. 116 and 124.


Dated:   August 13, 2020                                      SO ORDERED:
        White Plains, New York

                                                   NELSON S. ROMÁN
                                     United States District Judge