USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/1/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MISS JONES LLC,

                          Plaintiff,

        -against-                                      No. 17-cv-1450 (NSR)
                                                       OPINION & ORDER
KEITH STILES, MOY RLTY, LLC, VAN
HASSELT AUTO SERVICE,

                          Defendants.

NELSON S. ROMÁN, United States District Judge

        Plaintiff Miss Jones LLC ("Plaintiff" or "Miss Jones") brings this action against Defendant

Keith Stiles ("Defendant" or "Stiles"), as well as Defendants Moy Rlty, LLC and Van Hasselt

Auto Service (the "Non-Appearing Defendants"), to foreclose on a mortgage. Presently before the

Court is Plaintiff's motion for sanctions.

        For the following reasons, the Plaintiff's motion is DENIED.

## BACKGROUND

### I.      Procedural Background

        On April 16, 2019, Plaintiff moved for the appointment of a receiver, which Defendant

opposed. (ECF No. 77-80.) On July 10, 2019, the Court granted Plaintiff's motion for a receiver.

(ECF No. 86.) The Court ordered Plaintiff to recommend three individuals to act as receiver by

July 17, 2019 and Defendant to file any opposition to those individuals by July 19, 2019. (*Id.*)

On July 17, 2019, Plaintiff recommended three individuals as potential receivers. (ECF No. 88.)

Defendant did not object to any of the potential receivers. On September 27, 2019, the Court

issued an order appointing a receiver ("Receiver-1"). (ECF No. 95.) The order, among other

things, required Defendant to pay "all security deposits and the rents now due and unpaid or

hereafter to become due" to Receiver-1, and required the Defendant to tender complete copies of existing leases to the receiver. (*Id*.)

On November 27, 2019, Plaintiff notified the Court that Receiver-1 had fallen ill and was unable to continue to serve as receiver. (ECF No. 101.) Plaintiff requested that the Court appoint a new receiver ("Receiver-2"). (*Id*.) Plaintiff further represented that Defendant "had [his tenant, Lisa Lancia ("Lancia"),] pay the rent upfront for one (1) year, through the end of July of 2020." (*Id*.) To support this claim, Plaintiff attached two emails from Lancia to Plaintiff's representative in which Lancia indicates that she made a "[f]inal payment in July 2019" and the "rent is paid until 31 July, 2020." (*Id*.) Plaintiff alleged that Defendant entered into the upfront lease agreement in July 2019 in anticipation of the Court's order and with the intention of circumventing the order. (*Id*.) Plaintiff asked the Court to enter a proposed order that included two additional provisions: (1) that Defendant turn over all rents collected since April 22, 2019,[1] as opposed to September 27, 2019, and (2) set forth consequences for failure to comply, including holding Defendant in contempt. (*Id*.) Defendant did not oppose Plaintiff's request and the Court entered the proposed order (the "Order") on December 5, 2019. (ECF No. 102.)

On March 2, 2020, Defendant moved to amend the Order by removing the two new provisions. (ECF No. 150.) On March 16, 2020, Plaintiff moved to impose sanctions on the Defendant for allegedly violating the Order. (ECF No. 137.)

On October 9, 2020, the Court denied Defendant's motion to amend the Order because Defendant's objection was untimely. (ECF No. 161.) Now before the Court is Plaintiff's motion

---

[1] This date was chosen because Defendant was served with the motion for appointment of a receiver on April 16, 2020.

for sanctions. (ECF No. 137.) In its motion, Plaintiff requests that the Court (1) hold Defendant

in civil contempt for his failure to abide by the Order, fine him $200 per day, and jail him until

compliance is achieved, (2) certify the facts for criminal contempt proceedings, and (3) grant any

further relief the Court may deem just and proper. (*Id*.)

## II.    The Disputed Lease

Lancia is Defendant's tenant and has been for several years. (Affirmation of Lancia, ECF

No. 142.) According to Lancia, for the past six years it has been standard operating procedure

("SOP") for her to pay Defendant rent in advance in exchange for a discount. (ECF No. 145)

(citing Affidavit of Lancia, ECF No. 133-4.) Lancia's lease was due to end on December 31,

2018. (Pl. Ex. C, ECF No. 140-3; Pl. Ex. D, ECF No. 140-4.) Lancia and Defendant entered into

an undated agreement (the "Lease Rider") to extend her lease until June 30, 2020. (Pl. Ex. C,

ECF No. 140-3.) In exchange for a discounted rent, she agreed to pay $20,000 upfront and an

additional $3,000 per month due on the first of each month for 17.33 months starting on October

1, 2018. (*Id*.) On February 2, 2019, Lancia and Defendant entered into an amended lease rider

(the "Amended Lease Rider"). (Pl. Ex. D, ECF No. 140-4; ECF No. 142.) Under the new terms,

the lease was extended until July 31, 2020 and Lancia agreed to pay $32,000 upfront and $3,000

per month, due on the first of each month for ten months for a total of $62,000. (Pl. Ex. D, ECF

No. 140-4.) Consistent with these terms, Lancia's accounting reflects that she paid $20,000 in

August 2018 (presumably when the Lease Rider was entered into), $12,000 in February 2019

(when the Lease Rider was amended) and $3,000 per month from October 2018 through July

2019. (ECF No. 142-2; ECF No. 142-1.)[2] Per Lancia's accounting, the last payment Lancia made to Defendant Stiles was in July 2019. (Affidavit of Lisa Lancia, ECF No. 142-2.)

Defendant's accounting indicates that Lancia paid Defendant a total of $7,185 between April 22, 2019 and the date of the Order: $1,620 in May, $3,000 in June, and $2,565 in July. (ECF NO. 145-2.) Lancia's accounting indicates that she paid Defendant a total of $9,000 between May and July 2019 and $3,000 in April 2019. It is unclear how much, if any, of the April 2019 payment was made prior to April 22, 2019. Further, it is unclear whether Lancia made any deductions from these rent payments for property repairs.

In an affirmation dated March 12, 2020, Receiver-2 indicated that Defendant had not turned over any security deposit or rent. (ECF No. 138.)

## III.    Defendant's Finances

Defendant indicates he has had a negative bank account balance since January 2020. (ECF No. 145 ¶ 8.) Defendant's checking account statements show he had a balance of negative $4,784.80 as of February 2, 2020 and a balance of negative $4,861.40 as of March 1, 2020. (ECF No. 135-3; ECF No. 135-4.) Defendant claims his only employment is as an Uber driver and that he subsists on loans from friends and family, as well as an occasional real estate commission earned by his wife. (*Id.*) He claims he does not have a bank account with more than $100 in it,

---

[2] The Court notes that Lancia indicated that she was in the practice of deducting the cost of property repairs from these rent payments. (ECF No. 142 at 2.) The Court further notes that the Amended Lease Rider does not specify whether the ten $3,000 monthly payments were to begin in February 2019 (when the Amended Lease Rider was signed) or in October 2018 (when the Lease Rider payments began.)

has received no income that was diverted to the account of any other person, has no other liquid

assets, and is heavily in debt to family members. (*Id.*)

Defendant indicates that a good part of the funds he received between April 22, 2019 and

the date of the Order went to household expenses, and the rest went to pay for his children's

education. (ECF No. 145 ¶ 9.) Defendant also provided an email, dated February 24, 2020, from

the Resident Service Manager at his sons' school which indicates that Defendant's sons are

facing eviction and offers to allow Defendant to pay $2,225 towards their accounts to avoid

eviction. (ECF No. 145-5.)

## IV.   Plaintiff's Counsel's Emails with Lancia

On November 4, 2019, a representative for Plaintiff's Counsel ("Plaintiff's

Representative") emailed Lancia: "I understand that you informed [Plaintiff's Counsel] of the

following: 1) At [Defendant's] request in July of 2019 you prepaid your rent to [Defendant]

through the end of 2019. . . . Please confirm whether [this is] correct." (Pl's Ex. B, ECF No. 140-

2.)

In response, Lancia wrote: "1-the rent is paid until 31 July, 2020 . . . . If Michael wasn't

yelling so much he would have heard all this." (*Id.*) Plaintiff's representative responded: "When

did you pay the rent through July 31, 2020? When did Mr. Stiles ask you to pay through July 31,

2020? Can you please e-mail to me copies of those payments? We will need this information for

the new receiver the Court will appoint." (*Id.*) Plaintiff did not provide a copy of any response

from Lancia.

Plaintiff's Representative later wrote to Lancia:

> I have the Lease Rider and the Amended Lease Rider which state that you were to
> pay $20k upfront and in exchange for that you would pay a discounted monthly

rent of $3k and that your lease was extended through July 31, 2020. I also have some handwritten notes that appear to indicate something about 2019 rent payments, but I am not quite sure what. According to what [Plaintiff's Counsel] told me, you paid the full rent upfront through July 31, 2020 (so no more $3k monthly payments)-is that right, or did he misunderstand you? If that is correct, please let me know when Mr. Stiles asked you to pay the whole rent upfront through July 31, 2020, when you actually paid it, and please send proof of that payment. . . .

(ECF No. 133-4 at 4.) Lancia responded:

[Defendant] and I started out 6 yrs ago with me paying the rent a year in advance. SOP. As time went on, we extended the lease and I paid big chunks if not all of it in advance each year. So we never really decided. It was a given. I paid it off as soon as I could which I did, last payment was July of 2019. I have Venmo emails which I can send you in small payments for each month, but it's tedious, time-consuming work.

(*Id.*) Later that day, Plaintiff's representative emailed Lancia: "So if I understand correctly, in July of 2019 you gave Mr. Stiles $36k ($3k per month for 12 months) so you are paid up through July of 2020, is that correct?" (ECF No. 133-4 at 4.) Lancia responded: "No, I have it in bits and prices[sic]. Final payment in July 2019. Good until July 2[0]20." (*Id.*)

## STANDARD

"A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). The decision to issue contempt sanction is withing the Court's discretion. *Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*, 172 F. Supp. 3d 691, 698 (S.D.N.Y. 2016) (citing *Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir. 2003). A "district court's contempt power is narrowly circumscribed" and "the court must not lightly invoke its contempt power." *Ecopetrol S.A.*, 172 F. Supp. 3d at 698 (citing *Perez*, 347 F.3d at 423; *In re Att'y Gen.*, 596 F.2d 58, 65 (2d Cir. 1979).

District courts "have inherent power to enforce compliance with their lawful order through civil contempt." *Armstrong v. Guccione*, 470 F.3d 89, 102 (2d Cir. 2006) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). The Court may hold a party in civil contempt for failure to comply with an order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citing *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995)). It need not be established that the violation was willful for a finding of contempt to be proper. *Id*. (citing *Donovan v. Sovereign Sec. Ltd.,* 726 F.2d 55, 59 (2d Cir. 1984)).

Courts may also hold a party in criminal contempt. To do so, the party seeking contempt must prove beyond a reasonable doubt that "(1) the court entered a reasonably specific order; (2) defendant knew of that order; (3) defendant violated that order; and (4) his violation was willful." *United States v. Cutler*, 58 F.3d 825, 834 (2d Cir. 1995). To establish willfulness, the criminal contempt must have been committed with "a specific intent to consciously disregard an order of the court." *United States v. Lynch*, 162 F.3d 732, 735 (2d Cir. 1998) (internal quotation marks and citations omitted).

## DISCUSSION

## V.   Civil Contempt

### A.   *The Order was clear and unambiguous.*

Neither party disputes that the Order was clear and unambiguous. Therefore, this prong is satisfied.

7

B.        *The Court is Reasonably Certain that One Violation Occurred*

Plaintiff argues that Defendant "admits that in July of 2019, during the pendency of

Plaintiff's Motion for the Appointment of a Receiver to collect the rents, he arranged for

[Lancia] to prepay rent for one (1) year through July of 2020." (ECF No. 139 at 4.) Plaintiff

further argues that the Lease Rider and Amended Lease Rider show the Defendant and Lancia

had an agreement in place regarding payment of rent for the lease term and that there was

absolutely no legitimate reason for Defendant to change the terms of the lease mid-lease. (*Id.* at

5. See ECF No. 140 at 2.)

The Court finds no evidence in the record to support Plaintiff's assertion. Despite

Plaintiff's accusations, Defendant does not admit in his affidavit that he arranged for Lancia to

pre-pay her lease in July 2019. He instead indicates that "[t]he last rent [Lancia] paid to [him]

was in July, 2019, a sum which completed the payments due until July, 2020." (ECF No. 133-1 ¶

3.) As detailed in the Background Section, Lancia's emails, affidavit, receipt, and accounting, as

well as Defendant's affidavit and copies of the Lease Rider and Amended Lease Rider explain

the terms of Lancia's lease and when those terms were entered into. The evidence suggests that

sometime in 2018, Lancia and Defendant entered into the Lease Rider to extend Lancia's lease

from December 31, 2018 to June 30, 2020. Lancia agreed to pay $72,000 for the value of this 18-

month lease. She paid $20,000 upfront in August 2018 and agreed to pay $3,000 per month for

*17.333 months*, beginning in October 2018. Under this agreement, Lancia's last payment would

be due in February 2020. In February 2019, Defendant and Lancia modified the Lease Rider and

entered into the Amended Lease Rider. Under that agreement, Lancia provided an additional

$12,000 payment, the lease was extended to July 31, 2020 (one additional month), and Lancia

8

was required to pay $3,000 per month for *10 months*. Because she began paying $3,000 per month in October 2018, presumably her final payment was due in July 2019. Plaintiff appears to have misread both the Lease Rider and the Amended Lease Rider which indicate that the $3,000 per month payment was for a limited number of months and not for the entire term of the lease. The Amended Lease Rider was allegedly entered into in February 2019, prior to Plaintiff's Motion for an Order Appointing a Receiver.[3] Plaintiff seems to believe that Defendant and Lancia engaged in a subsequent change to the lease terms, but fails to offer any evidence of any additional change. (ECF No. 140 ¶ 14.) The Amended Lease Rider is consistent with Defendant and Lancia's affidavits and the fact that Lancia made her last payment in July 2019.

The Court is confused by Plaintiff's interpretation of the evidence and is disappointed that Plaintiff chose to include only select evidence when Plaintiff levied accusations against Defendant on November 27, 2019. (ECF No. 101.) Nevertheless, it is clear to the Court the Defendant violated the Order insomuch as he failed to provide Receiver-2 with the rent he collected from Lancia between April 22, 2019 and the date of the Order, an amount between $7,185 and $12,000.[4] This violation of the Order is undisputed by Defendant.

---

[3] Plaintiff seems to believe that under the Amended Lease Rider, Lancia was required to pay an additional $12,000 in February 2019 and $3,000 per month through July 2020. This is contrary to the actual text on the Amended Lease Rider, which makes it clear that Lancia is expected to pay $3,000 per month for ten months. Further, it would be illogical for Lancia to pay $12,000 in February 2019 solely for her lease to be extended by one month.

[4] Plaintiff asserts that Defendant failed to comply with at least three of the Order's mandates, citing Receiver-2's Affirmation. (ECF No. 139 at 8.) According to the Affirmation, Defendant has failed to submit a security deposit, any rent collected between April 22, 2019 and the date of the Order, and any monthly rent following the date of the Order. However, according to the affidavits of Lancia and Defendant, and as evidenced by Lancia's accounting, receipts, and lease rider agreements, there was no rent due between July 2019 and the date the motion was filed. Further, there is no evidence that Defendant had a security deposit to provide. As such, the Court finds that Defendant has only violated one of the Order's mandates—namely, Defendant has failed to provide Receiver-2 with the $7,185-$12,000 in rent he collected from Lancia between April 22, 2019 and the date of the Order.

C.        *Defendant's Attempt to Comply with the Order*

To hold Defendant in contempt, the Court must find that Defendant "has not diligently attempted to comply in a reasonable manner." *Paramedics*, 369 F.3d at 655 (citing *King,* 65 F.3d at 1058). Plaintiff argues that Defendant's efforts to circumvent the Court's September 27, 2019 Order demonstrate that Defendant has not diligent attempted to comply. (ECF No. 139 at 9.) As explained above, the Court does not believe that the record supports Plaintiff's assertion. However, despite owing at least $7,185 for nearly one year, Defendant has yet to make any payment whatsoever and there is nothing on the record to suggest any attempts by the Defendant to comply with the Order.

1.        Inability to Pay

As a defense to Defendant's failure to diligently attempt to comply with the Order, Defendant argues that Defendant cannot be held in civil contempt because he is unable to pay. *See Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995).[5] An inability to pay must be clearly established by the contemnor. *Id*. As evidence of his inability to pay, Defendant offers two bank account statements, a letter from the Resident Service Manager at his sons' school, and his own affirmation of his financial and employment circumstances.

---

[5] Plaintiff moves to hold Defendant in contempt pursuant to 18 U.S.C. 401(3). (ECF No. 139 at 6.) Defendant concedes that Plaintiff cites the correct standard of law, yet Defendant references only New York State law in his opposition. Other courts in this jurisdiction have applied federal law to contempt motions in diversity actions. *See, e.g., JSC Foreign Economic Ass'n Technostroyexport v. Int'l Development and Trade Services, Inc.*, 2006 WL 1206372 (S.D.N.Y. May 1, 2006) (applying federal law to contempt proceedings in diversity action based on state law claim); *Cordius Trust v. Kummerfeld*, 2009 WL 3416235 (S.D.N.Y. Oct. 23, 2009) (applying federal standard to contempt analysis in action based on state law claim). As such, the Court's opinion rests on federal law. Nevertheless, the defense Defendant asserts exists under both state and federal law and the Court believes the outcome would be the same under either law.

Plaintiff argues that Defendant has failed to demonstrate his inability to pay. (ECF No. 143 at 2-3.) Plaintiff notes that Defendant could have transferred funds between bank accounts and therefore takes issue with Defendant's failure to provide all of his bank statements from the relevant time period and to provide bank statements of his wife, Anne Stiles, who has been involved in collecting rent from Lancia and that Defendant. Finally, Plaintiff argues that Defendant failed to provide information regarding his own or his wife's earnings. However, in his affirmation Defendant indicates that he had no bank account with more than $100 in it and no liquid assets. (ECF No. 145 at 4.) He also indicates that he had a negative balance in his bank account since January. (*Id*.) Therefore, the Court finds that, at the time the motion was served, Defendant was unable to pay. It is, however, possible that Defendant was able to pay at the date the Order was issued.

Plaintiff further argues that, even if Defendant is unable to pay, the inability is self-created and Defendant can therefore be held in contempt. *Id*. at 4-5. To support this argument, Plaintiff cites to several out-of-district holdings. *See, e.g., S.E.C. v. Solow*, 682 F. Supp. 2d 1312 (S.D. Fla. 2010); *S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12 (D.D.C. 2000); *S.E.C. v. McGinn*, 2010 WL 11469814, at *1 (N.D.N.Y. Dec. 15, 2010). Even if this district recognized an exception to the inability to pay defense for circumstances where the inability was self-created, the exception would not apply here. The crux of Plaintiff's argument rests on its assertion that Defendant entered into a new lease sometime in July 2019 to circumvent the Order. As explained above, Plaintiff has failed to provide any evidence whatsoever for this assertion. To the contrary, the submitted affidavits, leases, and accounting all support Defendant's assertion that the Amended

11

Lease Rider was entered into in February 2019. Therefore, the Court finds that any inability to pay rent collected between April 22, 2019 and September 27, 2019 was not self-created.

      D.     *Court's Discretion*

Contempt is left to the discretion of the Court. To the extent that Plaintiff was able to pay the rent collected between April 22, 2019 and September 27, 2019, the Court declines to exercise its discretion to hold Plaintiff in contempt. The Court extended the Order's reach to April 22, 2019 due to Plaintiff's assertion that Defendant intentionally circumvented the order. As explained above, Plaintiff failed to provide any evidence showing that Defendant attempted to circumvent the Court's September 27, 2019 order. As such, the Court does not see a need to hold Defendant in contempt for his failure to comply with the portion of the Order directing Defendant to pay rent collected between April 22, 2019 and September 27, 2019.

However, the Court fully expects Defendant to comply with the Order. It is the Court's understanding that the Amended Lease Ride expired on July 31, 2020, nearly four months ago. The Court is deeply disturbed by recent allegations that Receiver-2 has yet to receive any payments. (ECF No. 163.) It is expected that all rent for the subject property shall be paid directly to Receiver-2. Further Defendant should make diligent efforts to pay the rent he collected between April 22, 2019 and September 27, 2019 to Receiver-2. If it comes to this Court's attention that Defendant or Lancia are violating the Order, the Court will not hesitate to reconsider holding Defendant in contempt.

## VI.    Criminal Contempt

Whereas the purpose of civil contempt is to coerce compliance, the purpose of criminal contempt is punitive. *See Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821

(1994). The Court does not believe punitive action is appropriate here, where the record does not suggest intentional circumvention of the Court's September 27, 2019 order. Therefore, the Court declines to exercise its discretion to entertain Plaintiff's request to hold Defendant in criminal contempt.[6]

## CONCLUSION

For the foregoing reasons, Defendant's motion for sanctions is DENIED. Accordingly, the Clerk of Court is directed to terminate the motion at ECF No. 137.

Dated:   December 1, 2020
         White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

---

[6] It also unlikely Plaintiff would prevail on the merits. The standard for criminal contempt is higher than the standard for civil contempt, as it requires a finding of willfulness.