UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/26/2022
```

MISS JONES, LLC,

                Plaintiff,

-against-

KEITH STILES, MOY RLTY, LLC, VAN HASSELT AUTO SERVICE,

                Defendants.

No. 17-cv-01450 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Miss Jones, LLC ("Plaintiff" or "Miss Jones") brings this action against Defendant Keith Stiles ("Defendant" or "Stiles"), as well as Defendants Moy Rlty, LLC and Van Hasselt Auto Service (the "Non-Appearing Defendants"), to foreclose on a mortgage. (ECF No. 1.) Before this court are Defendant's motion for summary judgment, (ECF No. 177), and Plaintiff's cross-motion for summary judgment, (ECF No. 167). For the foregoing reasons, Defendant's motion is GRANTED and Plaintiff's cross-motion is DENIED.

## BACKGROUND

The following facts are derived from the record and the parties' Rule 56.1 statements. They are not in dispute unless otherwise noted.

On and before July 7, 2007, Stiles was the owner of the premises at 136 Elmwood Road, South Salem, New York, also known as Section 47, Block 10056, Lot 3 ("the Mortgage Premises"). (Plaintiff's Counter-Statement of Uncontested Facts ("56.1") ECF No. 169, ¶ 2.) On or about July 7, 2007, Stiles executed an Equity Reserve Agreement (the "Note") and a Credit Line Mortgage secured by the Mortgage Premises (the "Mortgage") to obtain a line of credit up to the

1

amount of $350,000 from National City Bank ("NCB"). (56.1 ¶ 3; Plaintiff's Affidavit in Support of Cross-Motion for Summary Judgement ("Pl.'s Aff.") ECF No. 168, Ex. A & B.) Stiles was required to make monthly payments of interest to NCB pursuant to the Note. (56.1 ¶ 5.) The Note and the Mortgage were thereafter assigned through conveyances to Plaintiff, who now owns them. (56.1 ¶ 7.)

Stiles made monthly interest payments to NCB in 2007 and 2008, and his last payment was made on July 31, 2008. (*Id*. ¶¶ 8-9.) The Note and Mortgage contain terms for nonpayment and default, including that the "[l]ender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default." (*Id*. ¶ 13.) Stiles has been in default since his last payment. (*Id*. ¶ 14.)

On July 11, 2009, NCB mailed a letter addressed to Stiles to the Mortgage Premises which states:

> Effective immediately, the Account is hereby accelerated and we hereby demand payment in full of the entire amount owing on the Account as described below.
>
> As of the date of this letter your Account has an accelerated balance in full owing of $347,561.96 . . .
>
> Since the balance of your Account is accelerated, mothing less than full payment of the entire indebtedness is now acceptable.

(*Id*. ¶ 15; Affidavit of Keith J. Stiles ("Stiles Aff.") ECF No. 177, Ex. C.) On October 24, 2009, NCB resent this letter to the Mortgage Premises, and on December 14, 2009, NCB's successor, PNC Bank ("PNC"), resent the same letter to the Mortgage Premises. (*Id*. ¶¶ 16-17; Stiles Aff. Ex. C.) Neither NCB nor PNC have any record of the letters being returned as undeliverable. (Stiles Aff. at Ex. D ¶¶ 10-12.) However, PNC does not have a process for processing undeliverable mail. (Pl.'s Aff. at Ex. J.)

2

Stiles maintains that he received copies of these letters on or around their respective 2009 dates. (Reply Affidavit of Keith Stiles ("Reply Aff.") ECF No. 174, ¶ 7.) During his 2018 deposition, when asked if he had recalled seeing "the original document dated July 11, 2009," Stiles testified that he believed he received a default letter from NCB around that time. (*Id*. at Ex. 3 at 67:7-12, 70:24-71:5.) And when asked how he had received the October 24, 2009 letter, Stiles testified, "Originally by mail, and then by facsimile from National City." (*Id.* at 69:13-24, 70:9-71:17.)

Defendant also claims that after he moved out of the Mortgage Premises, he was "continuing to do some business in New York, and for a period of months [he] was back and forth and [he] picked up mail at the [Mortgage Premises] or had a friend take it for [him]." (Reply Aff. ¶ 4.) He then put in a mail forwarding with the Postal Service. (*Id*.) Defendant received other pieces of mail that were sent to the Mortgage Premises after he moved out, including (i) a mortgage statement from NCB dated July 8, 2008; (ii) a letter from NCB dated August 22, 2008; (iii) a mortgage statement from NCB dated September 6, 2008; (iv) an undated letter from NCB requesting a reply by February 28, 2009; (v) a Home Equity Line of Credit statement dated January 7, 2009; (vi) letters from collection agencies dated January 7, 2009, March 3, 2009, and April 20, 2009; (vii) an envelope from a municipal building department postmarked January 12, 2010 which contains a Postal Service forwarding label as of January 25, 2010; and (viii) a letter from Dreambuilders Investments, LLC dated September 29, 2010. (*Id*. ¶ 4 & Ex. 1.) In addition, on June 19, 2009, after Defendant became unable to pay the subordinate mortgage, the mortgagee commenced a foreclosure action and on June 26, 2009 a copy of the summons was mailed to the Mortgage Premises and received by Defendant a few days later. (*Id*. ¶ 5 & Ex. 2.)

Miss Jones disputes that Stiles received the acceleration letters. (Pl.'s Aff. ¶ 64.) In support, Miss Jones points to a September 18, 2009 letter addressed to Stiles at the Mortgage Premises that was returned to the sender. (Pl.'s Aff. ¶ 65 & Ex. I.) It states, "Return to sender. Stiles moved, left no address. Unable to forward. Return to sender." (*Id.*) Miss Jones also cites testimony by Stiles at his 2018 deposition where he noted that he was sure the Mortgage Premises received mail that was not forwarded, and acknowledged that he was not sure that all of his mail was forwarded to him after he submitted a forwarding address with the Postal Service. (*Id.* ¶ 68 & Ex. K at 90:25-91:22.) Miss Jones also argues that Stiles merely testified that he "believe[d]" he had received the letters by mail, and that he stated "I don't know what to say" when asked if he received an original copy of the October 2009 acceleration letter in the mail in 2009. (*Id.* ¶ 68 & Ex. K at 67:7-12; 70:24-71:17.)

In September of 2010, PNC assigned the Mortgage by an instrument in writing to DBI/ASG Mortgage Holdings, LLC ("DBI/ASG"). (56.1 ¶ 18.) From April 2012 through August 2014, RoundPoint Mortgage Servicing Corporation sent monthly loan statements addressed to Stiles at the Mortgage Premises. (Pl.'s Aff. at Ex. M.)

## I. Procedural Background

On August 29, 2016, notices of default were mailed to Defendant from Plaintiff's agent. (*Id.* at Ex. C & Ex. D.) Miss Jones then commenced this lawsuit on February 27, 2017. (ECF No. 1.) On March 25, 2018, Stiles filed a motion for summary judgment to dismiss the complaint and for a judgment on his counterclaim. (ECF No. 37.) The Court issued its Opinion & Order on March 18, 2019 (the "2019 Opinion"). (ECF No. 76.) After rejecting procedural objections to Stiles' motion, the Court then turned to Stiles' contention that Miss Jones's foreclosure claim was barred by the six-year statute of limitations under New York Civil Practices Law and Rules

("NYCPLR") § 213(4). (*Id.* at 7.) The Court first considered Stiles' contention that, under NYCPLR § 206(a), the statute of limitations had accrued in 2008 when demand could have been made by NCB as a result of Stiles missing his first interest payment. (*Id.* at 8.) The Court held that Miss Jones was not required to mail a notice of default, or otherwise demand repayment, prior to commencing its action, and, as a result, section 206(a) did not apply. (*Id.* at 8-9.)

The Court then turned to Stiles' second contention that the statute of limitations should run from the date of the first acceleration letter, which was purportedly sent to him in July 2009. (*Id.* at 12.) The Court, however, did not reach the merits of his argument, instead concluding that, although it was permissible to admit duplicates of the letters that formed the basis of Stiles' affirmative defense under the Best Evidence Rule, the letters were nevertheless inadmissible hearsay. (*Id.* at 12-14, 17.) Specifically, the Court concluded that Stiles had failed to establish that the letters were admissible under the business-records exception because he did not offer testimony from a "qualified witness" that affirmed "that the acceleration letters were made at or around the time of the defaults, the letters were filed as part of regular business, and [] the creation of the letters was part of regular business practice." (*Id.* at 16-17.) In so holding, the Court expressly reserved judgment on whether there was a genuine issue of material fact as to whether Stiles received the acceleration letters. (*Id.* at 17 n.6.)

On May 27, 2019, Stiles filed a motion for reconsideration of the Court's 2019 Opinion, arguing that (1) under RPAPL § 1304, Miss Jones, the debtholder, was required to make a demand on Defendant prior to commencing foreclosure proceedings, and (2) he had inadvertently failed to include a certification from the custodian of the acceleration letters in his summary judgment submission to the Court. (ECF No. 84.) In support of the second argument, Stiles provided a copy of a certification from Glass. (ECF No. 84-3.) The Court issued its Opinion and Order on July

10, 2019 (the "Reconsideration Opinion"). (ECF No. 86.) The Court first declined to grant reconsideration under Stiles' first argument, holding that (a) Stiles failed to raise the argument in his motion for summary judgment, and (b) section 1304 only imposes a requirement that creditors give ninety days' notice that the debtor is in default before commencing legal action, not a requirement that the creditor demand repayment. (*Id.* at 5-6.) The Court then rejected Stiles' attempt to supplement his motion for summary judgment with a certification that was inadvertently omitted during the summary judgment briefing. (*Id.* at 6.) The Court determined that permitting Stiles to submit evidence inadvertently excluded from his motion for summary judgment on a motion for reconsideration would "declaw the motion for summary judgment phase of litigation." (*Id.*) Even so, the Court noted that "the letters may be admissible at a hearing or trial provided that Defendant lays the proper foundation." (*Id.* at 8.)

Following its Reconsideration Opinion, on September 24, 2019, the Court granted Miss Jones leave to file a motion for summary judgment on its claim. (ECF No. 94.) Miss Jones thereafter filed its motion on January 21, 2020, while Stiles filed a cross-motion for summary judgment in response. (*See* ECF Nos. 103 & 104.) On August 13, 2020, the Court issued an Opinion and Order denying both motions (the "2020 Opinion"). (ECF No. 160.) The Court held that Plaintiff plainly established its *prima facie* entitlement to foreclosure, but that Defendant could make an affirmative showing to overcome Plaintiff's presumptive right to foreclose by showing the action is barred by the statute of limitations. (*Id*. at 17.) While Defendant consistently maintained that he received the acceleration letters from NCB and PNC in or around 2009, Plaintiff contended there was a question of fact as to whether Defendant actually received the letters as prior correspondence sent to Defendant was returned to sender. (*Id*. at 18-21.) Ultimately, the Court stated that this was a "remarkably close question," and held that Plaintiff "narrowly met its

6

burden of establishing a material question of fact regarding Defendant's entitlement to judgment on its affirmative defense", and therefore denied both motions. (*Id*. at 21.)

During a pre-trial conference on December 11, 2020, the parties agreed that this case could be resolved by motions for summary judgment. Therefore, the Court issued a briefing schedule granting Defendant leave to file a motion for summary judgment and granting Plaintiff leave to file a cross-motion for summary judgment. The motions were filed on June 3, 2021 (ECF No. 167 & 177.)[1]

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the

---

[1] Defendant refiled his motion on June 24, 2021 after receiving notice that the docket entry was deficient. (ECF No. 17.)

material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id*. at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## DISCUSSION

The only remaining question before this Court is whether the three acceleration letters from NCB and PNC were received by Defendant by mail in 2009. This Court previously held that Plaintiff established its *prima facie* entitlement to foreclosure as it provided documentary evidence of the Mortgage and the Note, both of which Plaintiff now owns by way of various assignments, and neither party disputes that Defendant defaulted on the debt by failing to make payments on the Note. However, Defendant avers that Plaintiff's action is barred by the six-year statute of limitations. While the Court previously held that the three acceleration letters from NCB and PNC clearly and unequivocally accelerated the mortgage and therefore allowed the statute of limitations

to begin to run in 2009, Plaintiff narrowly met its burden of establishing a material question of fact regarding whether Defendant did in fact receive the letters by mail.  The Court will reexamine this conclusion below.

After the Court issued its 2020 Opinion, the New York Court of Appeals decided *Freedom Mortg. Corp. v. Engel*, 37 N.Y.3d 1, 22–23 (2021).  In this case, the court held "the point at which a borrower has actual notice of an election to accelerate is not the operative event for purposes of determining when the statute of limitations begins to run . . . [t]he determinative question is not what the noteholder intended or the borrower perceived, but whether the contractual election was effectively invoked."  Therefore, the Court no longer needs to determine whether Defendant received the three acceleration letters.  The debt was accelerated once the first acceleration letter was sent, regardless of whether Defendant actually received it.  *See Wilmington Sav. Fund Soc'y v. Rashed*, 195 A.D.3d 774, 776 (2d Dep't 2021) ("Here, the subsequent commencement of the 2008 action accelerated the loan anew regardless of whether the summons and complaint were served upon the defendants.").  Therefore, the Court now holds that Plaintiff has failed to establish a material question of fact regarding Defendant's entitlement to judgment on his affirmative defense.  Accordingly, the Court holds that the statute of limitations began to run in 2009, and Plaintiff's claim is untimely.

I.   **Revocation of the Acceleration**

Plaintiff avers that even if the letters were accelerated, this acceleration was revoked by the mailing of demands for monthly mortgage payments.  (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Mem.") ECF No. 169 at 13.)  "A lender may revoke its election to accelerate the mortgage, but it must do so by an affirmative act of revocation occurring

9

during the six-year statute of limitations period subsequent to the initiation of the prior foreclosure action." *Cortes-Goolcharran v. Rosicki, Rosicki & Assocs., P.C.*, No. 17-CV-3976 (FB) (SJB), 2018 WL 3748154, at *3 (E.D.N.Y. Aug. 7, 2018) (citing *NMNT Realty Corp. v. Knoxville 2012 Tr.*, 58 N.Y.S.3d 118, 120 (2d Dep't 2017)). "For example, an express statement in a forbearance agreement that the noteholder is revoking its prior acceleration and reinstating the borrower's right to pay in monthly installments has been deemed a[ sufficient] 'affirmative act' of de-acceleration." *53rd St., LLC v. U.S. Bank N.A.*, 8 F.4th 74, 79 (2d Cir. 2021) (citing *Freedom Mortg.,* 37 N.Y.3d at 29).

Here, Plaintiff avers that Plaintiff's predecessor's loan servicer mailed monthly mortgage statements to Stiles each month from April 2012 through August 2014 demanding monthly installment payments, and that these mortgage statements revoked the acceleration. (Pl.'s Mem. at 14.) While Defendant was sent monthly mortgage statements, Defendant never received "an express statement" that the acceleration had been revoked and that his right to pay was reinstated. New York courts have held that the revocation should be "clear, unequivocal, and give actual notice to the borrower of the lender's election to revoke in sum, akin to the manner plaintiff gave notice to exercise the option to accelerate." *Wells Fargo Bank, N.A. v. Machell*, 58 N.Y.S.3d 876 (N.Y. Sup. Ct. Ulster Cnty. 2017); *see also Wells Fargo Bank, N.A. v. Maddaloni,* 186 A.D.3d 1587, 1589 (2d Dep't 2020) ("Because a lender may accept a partial payment without revoking its acceleration of a loan . . . a demand for partial payment is not inconsistent with the acceleration of a loan."); *Lavin v. Elmakiss*, 302 A.D.2d 638, 639 (3d Dep't 2003) ("the acceptance of [additional payments on the mortgage] is not inconsistent with defendants' insistence that the entire debt immediately be paid. Hence, the mere acceptance of such payments does not, in our view, constitute proof of an affirmative act of revocation."). Plaintiff has failed to show a clear,

unequivocal revocation of the acceleration. Therefore, Plaintiff has failed to prove the acceleration was revoked within the six-year statute of limitations.

Plaintiff avers that the New York Court of Appeals in *Freedom Mortgage* elaborated on the deceleration standard, stating that:

> the noteholder's act of revocation (also referred to as a de-acceleration) returns the parties to their pre-acceleration rights and obligations—reinstating the borrowers' right to repay any arrears and resume satisfaction of the loan over time via installments, *i.e.*, removing the obligation to immediately repay the total outstanding balance due on the loan, and provides borrowers a renewed opportunity to remain in their homes, despite a prior default.

*Freedom Mortg.*, 37 N.Y.3d at 28. However, nothing in *Freedom Mortgage* indicates that the court intended to discard with the requirement that a revocation be clear and unequivocal. Instead, the court, evaluating whether the withdrawal of a foreclosure action constitutes a valid revocation, held that "[t]he impetus behind the requirements that an action be unequivocal and overt in order to constitute a valid acceleration and sufficiently affirmative to effectuate a revocation is that these events significantly impact the nature of the parties' respective performance obligations." *Id*. at 30–31. The court therefore held that the voluntary discontinuance of a foreclosure action did constitute a revocation, as "[i]n such a circumstance, the noteholder's withdrawal of its only demand for immediate payment of the full outstanding debt, made by the 'unequivocal overt act' of filing a foreclosure complaint, 'destroy[s] the effect' of the election." *Id*. at 31.

As the court further held, this is the "functional equivalent of a statement by the lender that the acceleration is being revoked." *Id*. at 32. Therefore, where, as here, the alleged revocation is in the form of a statement or letter, an express statement that the acceleration has been revoked is still required. *See id*. at 29 ("For example, an express statement in a forbearance agreement that the noteholder is revoking its prior acceleration and reinstating the borrower's right to pay in

11

monthly installments has been deemed an 'affirmative act' of de-acceleration.") (citing *U.S. Bank Trust, N.A. v. Rudick*, 172 A.D.3d 1430, 1430–31 (1st Dep't 2019)).

Plaintiff's other cited cases are not in disagreement.  *See U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Adhami,* No. 18-CV-530 (PKC) (AKT), 2019 WL 486086, at *4–6 (E.D.N.Y. 2019) (holding a foreclosure action that was voluntarily discontinued by the lender was an affirmative act to revoke the acceleration of the mortgage); *In re Taylor,* 584 B.R. 590, 592; 597 (Bankr. E.D.N.Y. 2018) (dismissing plaintiff's contention that the statute of limitations for a foreclosure action had expired where the plaintiff was sent a revocation letter "notifying the Plaintiff that the Loan had been de-accelerated and 're-instituted' as an installment loan"); *U.S. Bank N.A. v. Ahmed*, 186 A.D.3d 779, 779–80 (2d Dep't 2020) (holding both the voluntary discontinuance of a foreclosure action by order and a stipulation of discontinuance both did not constitute revocations as they were "silent on the issue of acceleration"); *Deutsche Bank Nat'l Tr. Co. v. Ebanks*, 189 A.D.3d 1535, 1537 (2d Dep't 2020) (holding a stipulation of discontinuance in a foreclosure action that was "silent on the issue of the revocation of the election to accelerate and does not otherwise indicate that the plaintiff would accept installment payments from the defendant" did not constitute an affirmative act revoking the acceleration).

Accordingly, the Court holds that the demands for monthly mortgage payments did not consist of affirmative acts that revoked the acceleration of the mortgage.

## II.     Expungement of the Mortgage

Defendant has filed a counterclaim averring that if the Court holds that Plaintiff's claim is untimely, then the Court should expunge the Mortgage from the record.  (ECF No. 23; Def.'s Mem. at 11-12.)  Under New York law, Article 15 of the RPAPL provides:

> Where the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage, or to enforce a vendor's lien,

12

> has expired, any person having an estate or interest in the real property subject to such encumbrance may maintain an action against any other person or persons, known or unknown . . . to secure the cancellation and discharge of record of such encumbrance, and to adjudge the estate or interest of the plaintiff in such real property to be free therefrom . . . In any action brought under this section it shall be immaterial whether the debt upon which the mortgage or lien was based has, or has not, been paid; and also whether the mortgage in question was, or was not, given to secure a part of the purchase price.

N.Y. Real Prop. Acts. Law § 1501(4). A plaintiff seeking an Article 15 judgment must show "(i) the nature of the plaintiff's interest in the real property and the source of this interest; (ii) that the defendant claims an interest in the property adverse to that of the plaintiff, and the particular nature of the interest; (iii) whether any defendant is known or unknown, or incompetent; and (iv) whether all interested parties are named." *Costa v. Deutsche Bank Nat'l Trust Co.*, 247 F. Supp. 3d 329, 338 (S.D.N.Y. 2017).

A judgment issued pursuant to Article 15 must "'declare the validity of any claim . . . established by any party,' and may direct that an instrument purporting to create an interest deemed invalid be cancelled or reformed" and "must 'also declare that any party whose claim to an estate or interest in the property has been judged invalid, and every person claiming under him . . . be forever barred from asserting such claim." *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 417 (S.D.N.Y. 2010) (quoting § 1521(1)).

Here, as discussed above, Defendant has established that there is no genuine dispute of material fact that more than six years have passed since the accrual of Plaintiff's foreclosure action. The Court therefore holds that Defendant is granted summary judgment in favor of his RPAPL Article 15 counterclaim seeking the cancellation and discharge of record of the Mortgage.

### III. The Non-Appearing Defendants

Miss Jones commenced this lawsuit against Defendants Stiles, Moy Rlty, LLC, and Van Hasselt Auto Services on February 27, 2017 by filing a complaint, civil cover sheet, and Notice of

13

Certificate of Merit.  (ECF Nos. 1-2, 6.)  Electronic summons was issued for each defendant on that same day (ECF Nos. 7-9), and returned executed on March 20, 2017 and March 30, 2017, respectively, as to the Non-Appearing Defendants, and on May 11, 2017, as to Stiles.  (ECF Nos. 13, 15, 17.)  Although counsel for Defendant Van Hasselt Auto Service filed a notice of appearance (ECF No. 16), neither of the Non-Appearing Defendants have filed an answer or otherwise responded to the complaint.  Miss Jones has not obtained a Clerk's Certificate of Default as to the Non-Appearing Defendants.  This Court's 2020 Opinion denied Plaintiff's motion for default judgment for failure to comply with the applicable Federal and Local Rules.  Since this decision, Miss Jones has failed to pursue the necessary certificates of default or sought default judgment by an Order to Show Cause.

Under Rule 41(b) of the Federal Rules of Civil Procedure, "a district judge may, *sua sponte*, and without notice to the parties, dismiss a complaint for want of prosecution." *Taub v. Hale*, 355 F.2d 201, 202 (2d Cir. 1966); *see West v. City of New York*, 130 F.R.D. 522, 524 (S.D.N.Y. 1990) ("[T]he Supreme Court has recognized the inherent power of a district judge to dismiss a case for the plaintiff's failure to prosecute.").  "Dismissal for want of prosecution is a matter committed to the discretion of the trial judge." *Peart v. City of New York*, 992 F.2d 458, 461 (2d Cir. 1993) (internal quotation marks omitted).  This discretion, however, "is conditioned by certain minimal requirements." *Id*. (internal quotation marks omitted).  In particular, the Court should consider:

> (1) the duration of plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay; (4) whether the district judge has carefully balanced the need to alleviate court calendar congestion and a party's right to due process; and (5) whether the court has assessed the efficacy of lesser sanctions.

*Id*. (internal quotation marks omitted).

After the Court denied Miss Jones' request for a default judgment, it had almost two years to proceed against the Non-Appearing Defendants, but has failed to do so. Accordingly, Plaintiff's claims against the Non-Appearing Defendants are dismissed pursuant to Rule 41(b) for want of prosecution.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED. It is ordered that the Westchester County Clerk is hereby directed to cancel and discharge the above-mentioned Mortgage, duly recorded on October 25, 2007 under Control Number 472920098, and the assignments thereof and mark their records accordingly. It is further ordered that Miss Jones LLC and its successors and assigns are forever barred from asserting any claim to or interest in the premises by virtue of the cancelled mortgage. Plaintiff's claims against Defendants Moy Rlty, LLC and Van Hasselt Auto Service are dismissed for want of prosecution pursuant to Federal Rule of Civil Procedure 41(b). The Court respectfully directs the Clerk of Court to terminate the motions at ECF Nos. 167 & 177, enter judgment in favor of Defendant Keith Stiles, and close this case.

Dated: May 26, 2022
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge